Motion for Rehearing Overruled; Affirmed, Opinion of October 18, 2005
Withdrawn, and Substitute Opinion filed March 30, 2006









Motion for Rehearing Overruled;
Affirmed, Opinion of October 18, 2005 Withdrawn, and Substitute Opinion filed
March 30, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00268-CR

____________

 

KENNY MICHAEL PLOUFF, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

________________________________________________________________

 

On Appeal from the County Criminal
Court at Law No. 2

Brazoria County, Texas

Trial Court Cause No. 127622

 

________________________________________________________________

 

S U B S T I T U T E 
O P I N I O N

We overrule appellant=s motion for
rehearing.  We withdraw the opinion
issued in this case on October 18, 2005, and we issue this substitute opinion
in its place.  








Appellant Kenny Michael Plouff challenges his conviction
for misdemeanor driving while intoxicated (ADWI@).  He contends the trial court erred in
admitting evidence of the horizontal gaze nystagmus (AHGN@), walk-and-turn,
and one-leg stand tests.  We affirm. 

I.  Factual and Procedural Background

This case arises out of a traffic stop on March 9,
2003.  Officer Mask of the Texas
Department of Public Safety, Highway Patrol Division stopped appellant for a
defective rear taillight on the trailer that was hitched to his truck.  Officer Mask, viewing his rear-view mirror,
observed appellant driving in the oncoming traffic.  After appellant stopped and exited his
vehicle, Officer Mask asked him to produce a driver=s license and
proof of insurance.  Appellant had to
return to his vehicle for this documentation. 
When Officer Mask made initial contact with appellant, he noticed that
appellant=s breath smelled of alcohol and appellant=s eyes were
bloodshot and glassy.  Officer Mask asked
appellant if he had been drinking that night. 
Appellant responded that he had been at the racetrack and had consumed
two beers.

Officer Mask then performed several field sobriety tests on
appellant.  Officer Mask was certified by
the State of Texas to conduct these tests and had taken additional certified
training hours for conducting field sobriety tests.  Officer Mask first determined whether
appellant was a candidate for the HGN test by asking him if he had any recent
head injuries andor whether he was wearing glasses.  Officer Mask then checked for equal tracking
in both eyes and found appellant was a candidate for the HGN test.  Officer Mask began the HGN test by checking
for smooth pursuit in both of appellant=s eyes and found
that appellant did not have smooth pursuit in either eye.  Appellant also exhibited distinct jerking at
maximum deviation and onset of nystagmus prior to forty-five degrees.  Officer Mask testified that appellant
demonstrated six clue all six maximum clues of intoxication, the maximum
number, in each eye during the HGN test. 
Officer Mask testified that he performed all of the HGN techniques
according to the National Highway Traffic Safety Administration (ANHTSA@) manual for field
sobriety testing.[1]








After administering the HGN test, Officer Mask asked
appellant to perform the walk-and-turn test by standing with his right leg in
front of his left leg and maintaining that position until he told him to do
otherwise.  Officer Mask told appellant
that he was to take nine heel-to-toe steps in the direction of the patrol car;
and on the ninth step, he was to turn around on his left foot, place his right
foot back in front of his left foot, and take another nine heel-to-toe
steps.  During this test, appellant
started too soon, stopped while walking, stepped off the line, and had to use
his arms for balance.  Appellant did not
touch heel-to-toe; and he took the wrong number of steps. 

Next, Officer Mask asked appellant to perform the one-leg
stand test.  Officer Mask instructed
appellant to hold up his leg while counting to thirty.  However, Officer Mask stopped appellant
before he finished counting because he observed that appellant had put his foot
down and could not keep his balance without swaying.  Finally, Officer Mask asked appellant to
perform the hand-clap test.  Officer Mask
testified that appellant could not understand the instructions.  








After conducting the field sobriety tests, Officer Mask
concluded that appellant was under the influence of alcohol.  He asked if appellant would submit to
intoxilyzer testing, but appellant declined. 
Officer Mask arrested him and appellant was later charged by information
with unlawfully operating a motor vehicle in a public place while not having
the use of his mental or physical faculties by reason of introduction of
alcohol. 

Appellant pled not guilty to the DWI charge.  Before trial, appellant filed a motion to
suppress, in which he asked the trial court to exclude evidence of the HGN,
walk-and-turn, and one-leg stand tests. 
The trial court held a Kelly/Daubert hearing on the
motion-to-suppress issues. Kelly v. State, 824 S.W.2d 568, 573
(Tex. Crim. App. 1992) (stating that the appellate court must determine whether
the trial court=s decision was Awithin the zone of
reasonable disagreement@ given the evidence presented at the
suppression hearing and given the requirements of Rule 702).  After the hearing, the trial court denied
appellant=s motion to suppress and allowed testimony
at trial concerning all of the field sobriety tests.  Appellant did not object to the admissibility
of this evidence at any time during the trial. 

A jury convicted appellant of driving while intoxicated and
the trial court assessed punishment at 120 days= confinement,
probated for 18 months, and imposed an $800.00 fine. Appellant now appeals his
conviction and contends the trial court abused its discretion in admitting
evidence of the field sobriety tests. 

II.  Issues Presented

Appellant presents
three issues for appellate review: 

1.                 
Did the trial court err in denying the motion to
suppress and in admitting evidence of the HGN test and results? 

2.                 
Did the trial court err in denying the motion to
suppress and in admitting evidence of the walk-and-turn test and results? 

3.                 
Did the trial court err in denying the motion to
suppress and in admitting evidence of the one-leg stand test and results? [2]

 








III. 
Standard of Review

We
review the trial court=s
ruling on a motion to suppress under an abuse-of-discretion standard.  Long v. State, 823 S.W.2d 259,
277 (Tex. Crim. App. 1991).  A trial
court=s ruling
on a motion to suppress, if supported by the record, will not be overturned. Brooks
v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  At a
suppression hearing, the trial court is the sole finder of fact and is free to
believe or disbelieve any or all of the evidence presented.  Id. 
We give almost total deference to the trial court=s
determination of historical facts that depend on credibility and demeanor, but
review de novo the trial court=s
application of the law to the facts if resolution of those ultimate questions
does not turn on the evaluation of credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  

When,
as in this case, the trial court fails to file findings of fact, we view the
evidence in the light most favorable to the trial court=s
ruling and assume that the trial court made implicit findings of fact that
support its ruling as long as those findings of fact are supported by the
record.  State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000). Because the trial court was free to believe
any or all evidence presented and to make a determination of historical facts
supported by the record after evaluating the credibility and demeanor of the
witnesses at the hearing, we give the trial court=s
decision deference. See Guzman, 955 S.W.2d at 89; Griffith v.
State, 983 S.W.2d 282, 287B88
(Tex. Crim. App. 1998) (applying abuse-of-discretion standard to Kelly
issue).

IV. 
Analysis

A.  Did the trial court err in denying the motion
to suppress and in admitting evidence of the HGN test and results? 








In
his first issue, appellant contends the trial court erred in denying his motion
to suppress evidence of the HGN test and results because Officer Mask allegedly
did not administer the test in accordance with the NHTSA protocol as outlined
in a manual entitled Athe
DWI Detection and Standardized Field Sobriety Testing.@[3]  Testimony concerning the HGN test is
scientific evidence and is subject to the requirements of Kelly v. State,
824 S.W.2d at 573B74568
(Tex. Crim. App. 1992).  See Emerson
v. State, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994).  

The
admissibility of scientific evidence is governed by Texas Rule of Evidence
702.  This rule states that Aif scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.@  Tex.
R. Evid. 702.  To constitute
scientific knowledge that will assist the trier of fact, the proposed testimony
must be relevant and reliable.  See
Kelly, 824 S.W.2d at 572.  To be
considered reliable, evidence based on a scientific theory must satisfy the
following three criteria: (1) the underlying scientific theory must be valid;
(2) the technique applying the theory must be valid; and (3) the technique must
have been applied properly on the occasion in question. Id.  

Nystagmus is an involuntary
rapid oscillation of the eyes in a horizontal, vertical, or rotary direction.  Emerson, 880 S.W.2d at 765.  Horizontal gaze nystagmus refers to the
inability of the eyes to smoothly follow an object moving horizontally across
the field of vision, particularly when the object is held at an angle of
forty-five degrees or more to the side.  See
Webster v. State, 26 S.W.3d 717, 719 n.1 (Tex. App.CWaco 2000, pet.
ref=d).  Consumption of alcohol exaggerates nystagmus
to the degree it can be observed by the naked eye.  Emerson, 880 S.W.2d at 766. 








In Emerson,
the Court of Criminal Appeals examined the underlying scientific theory of
HGN testing and determined the science iswas valid.  Emerson, 880 S.W.2d at
769.  By making that determination, the
court relieved the State of the burden of presenting scientific evidence
regarding the HGN testing.  Gullatt v.
State, 74 S.W.3d 880, 883B84 (Tex. App.CWaco 2002, no
pet.).  The Emerson court also
determined that the HGN testing technique in the NHTSA manual is valid.  See Emerson, 880 S.W.2d at 768B69.  

The HGN technique
is applied properly when the officer follows the standardized procedures
outlined in the DWI Detection Manual published by NHTSAational Highway
Transportation Safety Administration.  See
id.  Officer Mask testified that he
complied with procedure and looked for the clues of intoxication, which he
found in appellant.  Slight variations in
the administration of the HGN test do not render the evidence inadmissible or
unreliable, but may affect the weight to be given the testimony.  Compton v. State, 120 S.W.3d 375, 378
(Tex. App.CTexarkana 2003, pet. ref=d).

Appellant contends
the State did not meet the third requirement of Kelly because it did not
prove the test was administered properly on the occasion in question.[4]  Appellant contends that Officer Mask did not
properly administer the HGN test because he allegedly did not follow the NHTSA
manual.  During the suppression
hearing, appellant introduced the testimony of Officer Troy Walden as an expert
in HGN testing and procedure.  Officer
Walden testified that Officer Mask performed the HGN test in a non-standardized
manner. In relying on this testimony, appellant asserts the following: 

(1)     Phase
Oone: Checking for Equal Tracking and Equal Pupil Size: Officer Mask failed to satisfy the
first phase of the test which is to check for equal tracking and equal pupil
size.  Appellant contends that although
Officer Mask moved the stimulus across his face, he took approximately four
seconds to complete this procedure on the left eye and six seconds to
complete the procedure on the right eye,; rather than the two seconds that
Officer Walden suggested it should take.








(2)     Phase
Ttwo: Lack of Smooth Pursuit: Officer Mask failed to satisfy the second phase of the
test, which involves looking for the lack of smooth pursuit. Officer Walden
testified that in this phase, one pass on one eye should take approximately
four seconds, while one pass on both eyes should take approximately eight
seconds;, and there must be two passes across each eye, thus four passes would
take approximately sixteen (16) seconds to complete.  Appellant contends that Officer Mask moved
the stimulus at a quicker pace and did not check each eye a second time.

(3)     Phase
Tthree: Distinct Nystagmus at Maximum Deviation.  Officer Mask failed to satisfy the third phase
of the test, which involves looking for distinct nystagmus at maximum
deviation.   Officer Walden testified
that that the proper administration of this phase requires moving the stimulus
to maximum deviation on each eye and then holding it at maximum deviation for
at least four seconds; and the procedure must be performed on each eye must be
done twice.  Appellant contends that
Officer Mask held the stimulus at maximum deviation for only one second when he
administered the test and he did not repeat the procedure a second time.

(4)     Phase
Ffour: Onset of Nystagmus Prior to forty-five (45) Degrees: Officer Mask failed to satisfy the
fourth phase of the test, which involves looking for the onset of nystagmus
prior to 45 degree movement of the eye. 
Appellant contends that although there were no problems with the
mechanics of Officer Mask=s administration of the onset
passes, he failed to repeat the process a second time in each eye. 

 








Officer Mask did
not admit to these alleged facts at the suppression hearing;[5]
rather, he specifically testified that he administered the HGN test in
accordance with his training and the NHTSA manual=s procedures.  Although Officer Walden did testify as to the
above facts, his testimony is based solely on his review of the videotape which
was also admitted into evidence.  The
quality of this videotape is poor, with bad lighting, and much of the HGN test
is obscured by Officer Mask=s body.  Moreover, the trial court easily could have
found that any variations made by Officer Mask were slight and therefore, did
not affect admissibility of the evidence.  Compare McRae v. State, 152 S.W.3d 739,
743 (Tex. App.CHouston [1st Dist.] 2004, pet ref=d.) (holding that
where the undisputed testimony establishes that the arresting officer did not
administer the HGN technique properly to appellant and officer admitted to
making several other misstatements concerning the HGN test, it was more than a Aslight@ deviation); and
Smothers v. State, No. 2‑03‑056‑CR,  2004 WL 1597652, at *2 (Tex. App.CFort Worth Jul.
15, 2004, no pet.) (stating that based upon the officer=s admission
that he did not administer the test properly, it is clear that the HGN test
results did not meet the Emerson requirements for admissibility) (not
designated for publication) with Compton, 120 S.W.3d at
378 (holding that slight deviation from manual in number of seconds taken to
administer HGN horizontal nystagmus test did not invalidate test); Quinney
v. State, 99 S.W.3d 853, 858 (Tex. App.CHouston [14th
Dist.] 2003, no pet.) (holding that the HGN test was administered properly and
evidence was admissible).[6]  Indeed, 
In addressing deviations in the administration of tests, the Compton court
opined: 

The manual itself only provides
approximations of the time required for properly conducting the tests; however,
Compton reasons that the slightly increased speed with which Officer Baggett
administered the test amounted to an inappropriate application of the
technique, invalidating the results.  This conclusion is untenable and, if accepted,
would effectively negate the usefulness of the tests entirely. Any variation in
timing would require courts to exclude the results as unreliable. 

 








120 S.W.3d at 378
(emphasis added).  Appellant asserts that
Compton does not apply to this case and is contrary to Emerson,
which directly controls the disposition of this case. Appellant=s disagreement
with the holding in Compton does not make it inapplicable to the facts
of this case, nor does it make Compton contrary to the Court of Criminal
Appeals=s decision in Emerson.
 We agree that Emerson is a
controlling case regarding the admissibility of HGN test results.  See Emerson, 880 S.W.2d 764B69.  However, we disagree with appellant that Compton
is contrary to Emerson.  In Compton,
the Texarkana Court of Appeals properly applied all the requirements and
factors in Emerson, and simply concluded that a police officer=s slight deviation
in the number of seconds taken to conduct the horizontal nystagmus (HGN) test
from the number of seconds recommended by the DWI Detection Manual did not
invalidate test results otherwise indicating that defendant was driving while
intoxicated.  Compton, 120 S.W.3d
at 378.  Despite appellant=s contentions,
this opinion does not conflict with the holdings in Emerson.  The Emerson court stated that officers
administering the HGN test must follow the standardized NHTSA procedures and
concluded that the officer in Emerson had followed the HGN technique
prescribed by the NHTSA.  See Emerson,
880 S.W.2d at 768B69. 
The Emerson court did not address how courts should handle
situations in which the officer follows the NHTSA technique and procedure for HGN
testing but deviates slightly from the approximate times set forth by the
NHTSA.  See Compton, 120 S.W.3d at
378.  Therefore, Compton does not
conflict with Emerson.  We agree
with the conclusion in Compton that it would be unreasonable to conclude
that any variation in administering the tests, no matter how slight, could
automatically undermine the admissibility of an individual=s performance of
the tests.  120 S.W.3d at 738.[7]









Presuming, without
deciding, that Officer Walden qualified as an expert in this case, we hold that
the trial court was free to believe any or all evidence presented and to make a
determination of the facts supported by the record after evaluating the
credibility and demeanor of the witnesses at the hearing and that the trial
court did not abuse its discretion in denying appellant=s motion to
suppress this evidence.  See State v.
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Because all three criteria of Kelly were
satisfied, Officer Mask=s testimony concerning the results of the
HGN test was admissible. 

In any event, we
conclude that even if the trial court had abused its discretion in admitting
evidence of the HGN test results, appellant was not harmed.  Error under the rules of evidence  in the admission of evidence constitutes
nonconstitutional error.  See Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to disregard a
nonconstitutional error that does not affect the substantial rights of the
defendant.  Tex. R. App. P.  44.2(b). 
A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury=s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997).

If the reviewing
court is unsure whether the error affected the outcome, the court should treat
the error as harmful, that is, as having a substantial and injurious effect or
influence in determining the jury=s verdict.  Webb v. State, 36 S.W.3d 164, 182B83 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
The defendant is not required to prove harm from an error.  Johnson v. State, 43 S.W.3d 1, 4
(Tex. Crim. App. 2001).  It is the duty
of the reviewing court to assess harm from the context of the error.  Id.

Thus, the proper
inquiry is whether the trial court=s error, if any,
in allowing Officer Mask to testify about the HGN test results substantially
swayed or influenced the jury=s verdict.  See Johnson, 43 S.W .3d at 4.  In making this determination, we consider the
trial court=s admission of the HGN testimony in the
context of the entire record and not just whether there was sufficient or
overwhelming evidence of the defendant=s guilt. Motilla
v. State, 78 S.W.3d 352, 355B56 (Tex. Crim.
App. 2002).

When Officer Mask
made initial contact with appellant, he noticed that appellant=s breath smelled
of alcohol and appellant=s eyes were bloodshot and glassy.  Officer Mask asked appellant if he had been
drinking that night.  Appellant responded
that he had been at the racetrack and had consumed two beers.  Officer Mask then performed several field
sobriety tests on appellant.








After
administering the HGN test, Officer Mask asked appellant to perform the
walk-and-turn test by standing with his right leg in front of his left leg and
maintaining that position until he told him to do otherwise.  Officer Mask told appellant that he was to
take nine heel-to-toe steps in the direction of the patrol car; and on the
ninth step, he was to turn around on his left foot, place his right foot back
in front of his left foot, and take another nine heel-to-toe steps.  During this test, appellant started too soon,
stopped while walking, stepped off the line, and had to use his arms for
balance.  Appellant did not touch
heel-to-toe; and he took the wrong number of steps. 

Next, Officer Mask
asked appellant to perform the one-leg stand test.  Officer Mask instructed appellant to hold up
his leg while counting to thirty. 
However, Officer Mask stopped appellant before he finished counting
because he observed that appellant had put his foot down and could not keep his
balance without swaying.  Finally,
Officer Mask asked appellant to perform the hand-clap test.  Officer Mask testified that appellant could
not understand the instructions.  

After conducting
the field sobriety tests, Officer Mask concluded that appellant was under the
influence of alcohol.  He asked if
appellant would submit to intoxilyzer testing, but appellant declined.  We conclude that, in the context of all the
evidence against appellant, the trial court=s error, if any,
in admitting the HGN testimony regarding the HGN test and results did not
affect appellant=s substantial rights and did not have a
substantial or injurious effect on the jury=s verdict.  The HGN test was only one of four tests
performed in the field, all of which appellant 
he failed.  See King, 953
S.W.2d at 271; see also Hunt v. State, No. 14‑00‑01318‑CR,
2002 WL 121967, at *2 (Tex. App.CHouston [14th
Dist.] Jan. 31, 2002) (not designated for publication) (presuming admission of
testimony about the HGN test was error and holding that it did not affect Hunt=s substantial
rights and was Aharmless in light of other properly
admitted testimony@). 
Accordingly, we overrule appellant=s first issue.








B. 
Did the trial court err in denying the motion to suppress and in
admitting evidence of the walk-and-turn and one-leg stand tests and results?

 

In his second and
third issues, appellant contends the trial court erred by admitting evidence of
the walk-and-turn and one-leg stand tests under Texas Rule of Evidence 702
because Officer Mask allegedly performed these tests improperly.  Appellant contends that, under United
States v. Horn, 185 F. Supp. 2d 530 (D. Md. 2002), testimony concerning the
one-leg stand and walk-and-turn tests are admissible only if they meet the
Kelly criteria for expert testimony. 
See Kelly, 824 S.W.2d at 573. 
We disagree with appellant=s position.  

The Horn
court held that testimony concerning the one-leg stand test could constitute
either lay witness testimony or expert testimony, depending on how it was used
at trial.  See McRae, 152
S.W.3d at 745 (citing Horn, 185 F. Supp.2d at 556).  Acknowledging that the probative value of the
one-leg stand test derives from the basic nature of observing human behavior,
the Horn court concluded that testimony about this test was lay witness
testimony if the officer testified only about her observations of a defendant=s Aappearance,
coordination, mood, ability to follow instructions, balance, the presence of
the smell of an alcoholic beverage[,] . . . and the observations of the
defendant=s performance of the standardized field
sobriety tests. . . .@  See
id.  








Texas Rules of
Evidence 701 and 702 allow both lay and expert witnesses to offer opinion
testimony concerning intoxication.  See
Emerson, 880 S.W.2d at 763. 
Texas, like Maryland, allows peace officers to testify as lay witnesses
about their observations of a suspect=s performance on
the one-leg stand test.  See id. at
746.  Texas courts have held that,
because an officer=s testimony about a suspect=s coordination,
balance, and any mental agility problems exhibited during the one-leg stand and
walk-and-turn tests are observations grounded in common knowledge, the officer=s testimony based
on these observations is considered lay witness opinion testimony under Rule
701, and not expert testimony under Rule 702. 
Compare Tex. R. Evid.
701 with Tex. R. Evid. 702;
see also Emerson, 880 S.W.2d at 763 (explaining that peace officer need
not qualify as expert to express opinion whether person he observed was
intoxicated).  The one-leg stand and
walk-and-turn tests are grounded in the common knowledge that excessive alcohol
consumption can cause problems with coordination, balance, and mental agility,
and the its sole purpose of these tests is to reveal clues or symptoms of
impairment.  See Smith v. State,
65 S.W.3d 332, 347 (Tex. App.CWaco 2001, no
pet.). 

We agree with our
sister court in McRae and conclude that the testimony by the arresting
officer concerning the one-leg stand and walk-and-turn tests is lay witness
testimony governed by Rule 701.  See
McRae, 152 S.W.3d at 745.  At
the suppression hearing, Officer Mask stated that, during the one-leg stand
test, a suspect is supposed to will place one foot six inches above the ground,
whichever foot the suspect chooses, while the suspect stands with hands down by
his side, and counts from 1001 to 1030 or until he is told to stop.  Officer Mask testified that he looks at
four  Four clues that an officer seeks
during the one-leg stand test-- are swaying, using arms for balance, dropping a
foot, and hopping.  He statedOfficer Mask
testified at the suppression hearing that, during the one-leg stand test,
appellant put his foot down and swayed while balancing. 

Officer Walden
testified that Officer Mask failed to instruct appellant to keep his legs
straight, to point his toe on his elevated foot, or to count properly.  He also testified that the important factor
in the test according to the NHTSA manual, is that the subject hold the foot
off the ground for a total of thirty seconds, not when the subject counts to
thirty seconds, and therefore because the test was administered improperly, the
results of the test were it was inadmissible. 








During appellant=s performance of
the one-leg stand test, Officer Mask observed appellant saw him drop his foot,
use his arms for balance, sway, and fail to follow instructions. Officer Mask
concluded that appellant was intoxicated because he could not follow
directions.  Appellant has not referred
this court to any Texas authority, and we are aware of none, holding that, when
an officer uses terms like Astandardized
clues,@ Atest,@ or Adivided attention,@ the officer is no
longer testifying as a lay witness and begins to testify as an expert, who therefore
must be qualified.  See Horn, 185
F. Supp. 2d at 555B56. 
We hold that Officer Mask=s testimony, as
described above, concerning his observations of appellant=s performance on
the one-leg stand test was admissible under Rule 701.

As for the
walk-and-turn test, we conclude that Officer Mask=s testimony
concerning his observations of appellant=s performance on
this test was also admissible under Rule 701. 
The walk-and-turn test, like the one-leg stand test, is grounded in the
common knowledge that excessive alcohol consumption can cause problems with
coordination, balance, and mental agility. 
See Smith, 65 S.W.3d at 347.  Officer Mask testified that after giving
appellant instructions for the walk-and-turn test, appellant started too soon,
stopped while walking, stepped off the line, used his arms to balance, did not
touch heel-to-toe, and took the wrong number of steps.  The trial court was free to believe any or
all evidence presented and to make a determination of the facts after
evaluating the credibility and demeanor of the witnesses at the hearing.  We hold that the trial court did not abuse
its discretion in denying the motion to suppress this evidence.  See State v. Ballard, 987 S.W.2d 889,
891 (Tex. Crim. App. 1999).  Accordingly,
we overrule appellant=s second and third issues. 

Having overruled
all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

/s/      Kem
Thompson Frost

Justice

 

Judgment rendered and Substitute
Opinion filed March 30, 2006.

Panel consists of Chief Justice
Hedges, and Justices  Fowler and Frost.

Publish C Tex.
R. App. P. 47.2(b).











[1] 
As explained
below, appellant takes issue with the procedure and technique that Officer Mask
used when administering the HGN test.  In
their appellate briefs, the parties rely upon the 2000 and 2002 editions of
this manual.  Officer Mask testified that
he was trained under the 2000 edition; it appears, however, that the 2002
edition was in effect at the time of appellant=s arrest and trial.  No edition of the manual was introduced into
evidence in the trial court, and none is included in our record.  On rehearing, appellant submitted an
electronic version of every NHTSA field sobriety testing manual since the late
1980s.  Nonetheless, these documents were
not before the trial court and are not part of our appellate record.  Appellant asserts on rehearing that it is
proper for this court to consider versions of this manual that were not
presented to the trial court and that are not part of our appellate record.  Appellant argues that the Emerson court
made it clear that such consideration is proper.  See Emerson v. State, 880 S.W.2d 759
(Tex. Crim. App. 1994).  The Emerson
court cited the NHTSA manual.  See id.
at 766. However, in Emerson a police officer indicated he followed the
procedures in this manual, and the Emerson court does not state whether
the manual it cites is in the appellate record. 
See id. at 766B69.  The Emerson
court stated that it took judicial notice of Ascientific articles@ so that it could determine the
reliability of the scientific theory underlying the HGN test.  See id. at 764B65. 
Although one of the dissenting opinions in Emerson stated that
the Emerson majority had taken judicial notice of the manual, the Emerson
majority described the manual as a Apamphlet@ rather than a Ascientific article@ and never stated that it took judicial notice of the
manual. See id. at 766B69 & 776 (Baird, J., dissenting).  The Emerson opinion does not stand for
the proposition that we may review versions of the manual that are not in our
record without taking judicial notice of them. 
Even if the Emerson majority had taken judicial notice of the
manual, it also noted that judicial notice is discretionary.  See Emerson, 880 S.W.2d at 765.  No party in this case has asked this court to
take judicial notice of any version of the manual, and we decline to do
so.  See Hernandez v. State, 116
S.W.3d 26, 30B31 (Tex. Crim. App. 2003)
(declining to hold Aan appellate scientific seminar@ and declining to take judicial
notice of scientific articles and treatises that were not presented to the
trial court).





[2] 
For simplicity and because the legal analysis is similar, we address
issues two and three together. 





[3] 
Appellant states in his appellate brief at footnote 2, page 11, that the
2002 manual was in effect at the time of his arrest and trial.  However, because this manual was not admitted
into evidence, we do not take a position on this issue.





[4] 
Officer Mask was trained according to the standards in the NHTSA manual,
was certified to perform the HGN test, and relied on that training and manual
in administering the HGN test to appellant. 
Appellant has not challenged Officer Mask=s qualifications.

 





[5] 
Appellant makes
several references to trial testimony throughout his appellate brief; however,
we are confined to the evidence that was admitted at the time the trial court
made its ruling on the motion to suppress. 
See Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996).  Appellant contends, on rehearing,
that all of the testimony from trial regarding the deficiencies in the HGN test
are evident on the videotape, which was in evidence at the suppression hearing.  We do not agree with appellant that the
errors asserted by appellant in regard to the administration of the HGN test
are  visible orvisibly obvious on the
videotape.  The videotape is of poor
quality and much of the test is obscured by Officer Mask=s body.





[6] 
In his motion
for rehearing, appellant cites Ford v. State, 158 S.W.3d 488 (Tex. Crim.
App. 2005) in support of his assertion that Officer Mask=s conclusory testimony was not
sufficient to show compliance with the required standards by clear and
convincing evidence.  The Ford
case does not deal with the admissibility of HGN test results.  See Ford, 158 S.W.3d at 493.  Furthermore, we do not agree with appellant=s contention that Officer Mask=s statements  are were conclusory.  In addition, at the motion-to-suppress
hearing, the judge was free to believe any or all evidence presented and to
make a determination of historical facts supported by the record after
evaluating the credibility and demeanor of the witnesses at the hearing,
including both Officer Mask and appellant=s expert, Officer Walden.





[7] 
Appellant also
makes several arguments that Compton does not apply to this case because
the facts are not the same.  Although the
deviations in the administration of the HGN test might not be the same in this
case as in Compton, we conclude Officer Mask=s deviations, if any, like those
found in Compton, could have been found by the trier of fact to be
slight.  For example, appellant contends,
among other things, that Officer Mask failed to satisfy the first phase of the
test which is to check for equal tracking and equal pupil size.  Appellant contends that although Officer Mask
moved the stimulus across his face, he took approximately four seconds to
complete this procedure on the left eye and six seconds to complete the
procedure on the right eye rather than the two seconds that Officer Walden
suggested this procedure should take.  We
conclude that the difference of two seconds 
should not render the test results inadmissible.  See Compton, 120 S.W.3d at
379.  The same analysis applies to
appellant=s other complaints regarding other
partsportions of this test.