COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

RAYMUNDO SOTELO,                                No. 08-07-00095-CR

§

　　　　　Appellant,                              Appeal from

§

v.                                              County Court at Law No. 7

§

THE STATE OF TEXAS,                             of El Paso County, Texas

§

　　　　　Appellee.                              (TC # 20050C07910)

§

**O P I N I O N**

Raymundo Sotelo appeals his conviction for driving while intoxicated. Guilt was determined by a jury. The trial court assessed punishment at 180 days in the El Paso County Jail, but suspended imposition of the sentence and placed Appellant on community supervision for a period of twelve months. We affirm.

**FACTUAL SUMMARY**

Officer Allen Lee Edington testified that on June 4, 2005, he was flagged down by a motorist as he drove down North Mesa in west El Paso. He proceeded through the next intersection, and made a U-turn in an attempt to locate a possibly intoxicated driver traveling in a vehicle that matched the description given to him by the motorist. Once he spotted it, he positioned himself behind it. As the driver, later shown to be Appellant, proceeded through an intersection, the vehicle sped up, and then slowed down suddenly even though nothing was in front of it. Appellant sped up again, drifted slightly out of his lane of traffic, and then drifted back across another lane of traffic. Appellant's wheels crossed over the lane marker and occupied the second lane of traffic. He again slowed down

although nothing was in front of him. As Appellant approached another intersection, he came to a complete stop at a green light. He then made a right turn on Thunderbird Drive and turned into a parking lot. At this point, Officer Edington activated his overhead lights.

As the officer approached him, Appellant exited the vehicle. Edington ordered him to return to the car. He also observed Appellant place an object inside his mouth and chew vigorously. Appellant's eyes were red and glassy, and he appeared sleepy or dazed as if he were just waking up. Officer Edington could detect the odor of alcohol emanating from inside the vehicle. As he answered the officer's questions, Appellant had a very slow and deliberate tongue and slurred his speech.

Based on these observations, the officer asked Appellant to step out of the vehicle. Edington positioned Appellant for the horizontal gaze nystagmus [HGN] test.[1] Appellant stood with his feet together and hands at his side. Officer Edington first tested for smooth pursuit for approximately two seconds, observing a lack of smooth pursuit and the presence of nystagmus in Appellant's eyes.[2] He then checked for distinct nystagmus at maximum deviation, observing nystagmus independently in

---

[1] "Nystagmus is an involuntary jerking or bouncing of the eyeball that occurs when there is a disturbance of the vestibular (inner ear) system or the oculomotor control of the eye. Horizontal gaze nystagmus (HGN) refers to a lateral or horizontal jerking when the eye gazes to the side. In the impaired driving context, alcohol consumption or consumption of certain other central nervous system depressants, inhalants or phencyclidine, hinders the ability of the brain to correctly control eye muscles, therefore causing the jerk or bounce associated with HGN. As the degree of impairment becomes greater, the jerking or bouncing, i.e. the nystagmus, becomes more pronounced. This is assessed in the horizontal gaze nystagmus test." *See* http://www.nhtsa.dot.gov/people/injury/enforce/nystagmus/hgntxt.html.

[2] According to NHTSA standards, the officer should move the object slowly but steadily from the center of the subject's face towards the left ear. The left eye should smoothly follow the object, but if the eye exhibits nystagmus, the officer notes the clue. The officer then checks the right eye.

each eye.[3] Finally, Officer Edington observed the angle of onset of nystagmus prior to 45 degrees.[4]
Because Appellant exhibited some of the indicators of possible intoxication, Officer Edington
proceeded with the walk and turn test. According to Officer Edington, Appellant had difficulty
performing this test. He lost his balance, started too soon, stepped off the line, did not touch heel
to toe, and made an improper turn. Finally, Officer Edington asked Appellant to perform the one-
legged stand. Appellant had difficulty performing this test as well. He put his foot down almost
immediately, used his arms for balance, and swayed back and forth. Based on the field sobriety tests
and his own observations, Officer Edington believed Appellant was impaired.

## LEGAL AND FACTUAL SUFFICIENCY

In Point of Error One, Appellant complains the State failed to prove that there was reasonable
suspicion to effectuate the traffic stop, and/or that the evidence failed to prove there was probable
cause to stop Appellant given the totality of the circumstances. In essence, this argument is a
challenge to the legal and factual sufficiency of the evidence to support the jury's implied finding that
Officer Edington had reasonable suspicion to stop and detain Appellant.

### Standard of Review

In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light
most favorable to the verdict and determine whether a rational juror could have found the essential

---

[3] NHTSA standards specify that starting again from the center of the suspect's face, the officer should move the object toward the left ear, bringing the eye as far over as possible, and hold the object there for four seconds. The officer should note the clue if there is a distinct and sustained nystagmus at this point. The officer should then hold the object at maximum deviation for at least four seconds to ensure that quick movement of the object did not possibly cause the nystagmus. The officer then checks the right eye. This is also referred to as "end-point" nystagmus.

[4] In this test, the officer moves the object at a speed that would take about four seconds for the object to reach the edge of the suspect's left shoulder. The officer notes this clue if the point or angle at which the eye begins to display nystagmus is before the object reaches forty-five degrees from the center of the suspect's face. The officer then moves the object towards the suspect's right shoulder. Generally, forty-five degrees from center is at the point where the object is in front of the tip of the subject's shoulder.

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2781.

In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is factually sufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

*Jury Instruction*

The jury was instructed pursuant to Article 38.23(a) of the Texas Code of Criminal Procedure:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts, which taken together with rational inferences from those facts, lead them to conclude that

a person detained actually is, has been, or soon will be engaged in criminal activity.

Now, bearing in mind, if you find from the evidence that on the occasion in question the officer did not have a reasonable suspicion of criminal activity immediately preceding his stop and detention by the officer herein or you have a reasonable doubt thereof, then such stopping of the accused would be illegal. Furthermore, if you find the facts to be so, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the Defendant and his conclusion drawn as a result thereof and you will not consider such evidence for any purpose whatsoever and you must therefore acquit the Defendant, and find him not guilty on both cases.

*Analysis*

A factual sufficiency review is only appropriate to address the sufficiency of the State's proof of the elements of the charged offense. *Hanks v. State*, 137 S.W.3d 668, 672 (Tex.Crim.App. 2004). Resolution of a fact issue pursuant to an Article 38.23 instruction only affects what evidence the jury will consider in determining guilt; it does not address the factual sufficiency of the evidence in support of the essential elements of the charged offense. *See Hanks*, 137 S.W.3d at 671. In other words, a factual sufficiency review is only appropriate regarding the State's proof of the elements of the offense, not the jury's implied findings of facts supporting reasonable suspicion. *Id*. at 672. Similarly, because a legal sufficiency review is also limited to the essential elements of the offense, the Article 38.23 instruction cannot be used to measure the legal sufficiency of the evidence. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

For a conviction of driving while intoxicated, the prosecution must prove beyond a reasonable doubt that the defendant was intoxicated while driving a motor vehicle in a public place. TEX.PEN.CODE ANN. § 49.04 (Vernon 2003). The presence or absence of reasonable suspicion is not an element of the offense charged. *See id*.; *Hanks*, 137 S.W.3d at 671, *quoting Caddell v. State*, 123 S.W.3d 722 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd)(whether or not evidence was illegally obtained is not an element of the offense, and therefore not subject to a sufficiency review).

Because Appellant does not challenge the sufficiency of the evidence supporting the elements of the offense, we overrule Point of Error One.

## IMPROPER ARGUMENT

In Point of Error Two, Appellant complains that the prosecutor misstated the law during voir dire, which violated his constitutional right to a fair trial under both the United States and Texas Constitutions.

*Relevant Facts*

During voir dire, the prosecutor attempted to paraphrase the definition of intoxication. The prosecutor stated the following:

> Prosecutor:[5]    We've got a sharp jury this morning. Okay. So drunk is not equal to intoxicated. Okay. And I will give you a technical reason for that. Intoxicated is what we call a term of art. There is a definition. We'll be dealing with that definition. It's not drunk. The definition, to paraphrase, intoxication actually is going to mean impaired.

In response to defense counsel's objection, the court responded:

> The Court:    We have -- as I've said before, members of the jury, you will get all the definitions from me at the end of the trial. So the lawyers are trying to phrase things in order to ask you some questions but the law you're going to get you're going to get from me.

The court overruled the objection and Appellant's request for a mistrial. The prosecutor then continued:

> Prosecutor:    You will be given a full definition and what you will find is these words being used in this definition. It needs to be very clear that impairment is something that you're going to have to figure out.
>
> Now, what does the law say? I will read it. It will take me just a second. A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. Doesn't say drunk.

---

[5] In the reporter's record, this statement is incorrectly attributed to the trial court; however, from the context, it appears to be the prosecutor's statement

And all this will tie together as the Judge gives you the law. I just want you to be familiar.

*Analysis*

Generally, a prosecutor's statements during voir dire will not constitute error unless they are contrary to the court's charge. *See Wilder v. State*, 111 S.W.3d 249, 253 (Tex.App.--Texarkana 2003, pet. ref'd). Absent evidence to rebut the presumption, the reviewing court must presume the jury followed the trial court's instructions and admonishments. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005).

While the Texas Penal Code does not use the word "impairment" in the definition of "intoxicated," the prosecutor's statements were not contrary to the court's charge. The charge explained that a person is "intoxicated" when that person does not have the normal use of his physical or mental faculties by reason of the introduction of alcohol. Stating that a person in such a state is "impaired" is not contrary to the charge, and is supported by the Texas Penal Code and Texas jurisprudence. *See* TEX.PEN.CODE ANN. § 49.01(2)(A); *see also Lewis v. State*, 191 S.W.3d 335, 341 (Tex.App.--Waco 2006, pet. ref'd)(describing Appellant's performance on field sobriety test as "indication of impairment"). Moreover, the venire panel was directed to only consider the law as provided by the court. *See Thrift*, 176 S.W.3d at 224. Consequently, we overrule Point of Error Two.

**EVIDENTIARY ERROR**

In Point of Error Three, Appellant contends the trial court erred by allowing Officer Edington to testify concerning the administration and results of the horizontal gaze nystagmus tests because the tests were improperly administered pursuant to NHTSA testing procedures.

*Standard of Review*

We review evidentiary rulings for an abuse of discretion. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006). We are required to uphold the trial court's decision when it falls within the zone of reasonable disagreement, and we may not reverse solely because we disagree with it. *See id*.

*Relevant Facts*

Defense counsel asked to take Officer Edington on voir dire outside the presence of the jury to question him regarding the administration of the field sobriety tests in general and the HGN tests in particular. The officer testified that he positioned Appellant to stand with his legs and feet together with his hands at his side. Officer Edington took out his ink pen and asked whether Appellant was wearing contacts or glasses. He positioned the pen twelve to fifteen inches from Appellant's face. In checking for smooth pursuit, Officer Edington moved the pen to the side for one second and moved it back to center at a rate of one second. He admitted that the NHTSA manual requires slower movement of the object, moving it toward the ear for two seconds and then returning to center for two seconds.

Counsel then asked Officer Edington to explain his administration of the test for distinct nystagmus at maximum deviation. Edington testified that he took the stimulus slightly above eye level, twelve to fifteen inches from the center of the face, moving the pen to the outward-most portion of one eye so that there was almost no visible white at the corner. He then moved the pen back to the center of the face and passed it to the outer most portion of the other eye. Timing is important to this part of the test and requires a minimum of six seconds per eye.

Finally, Officer Edington explained the test to determine the onset of nystagmus prior to 45 degrees. He took eight seconds per eye and checked each eye once. Defense counsel pointed out that the NHTSA manual advises four seconds rather than eight seconds per eye. The officer admitted

that he should have performed the test twice. At the conclusion of the voir dire examination, Appellant asked the court to exclude all testimony with regard to the HGN testing. The court overruled the objection:

> The Court: I'm aware of it. I've read it. I am concerned that the deviations were somewhat significant but I am going to allow the testimony. So I overrule your objection. I will allow it but I may reconsider this on a motion further down the road if it becomes necessary to do it. But for right now, your objection is overruled.

*Analysis*

For expert testimony to be admissible, the witness must be qualified by "knowledge, skill, experience, training, or education . . . ." TEX.R.EVID. 702. The proponent must demonstrate that the witness is qualified as an expert on the specific matter in question. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000). To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992).

The Court of Criminal Appeals has determined that both the theory underlying the HGN test and the technique employed in administering it are sufficiently reliable. *See Emerson v. State*, 880 S.W.2d 759, 768 (Tex.Crim.App. 1994). For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the testifying witness is qualified as an expert concerning its administration and technique. *Emerson*, 880 S.W.2d at 769. A law enforcement officer is qualified as an expert if he has received practitioner certification by the State of Texas to administer the HGN testing. *Id*. But this is not the exclusive means by which an officer may qualify. *See Kerr v. State*, 921 S.W.2d 498, 502 (Tex.App.--Fort Worth 1996, no pet.)(*Emerson* does not require that an expert must be certified by the State of Texas before his testimony on the subject of

HGN test will be admissible); *see also Ellis v. State*, 86 S.W.3d 759, 761 (Tex.App.--Waco 2002, pet. ref'd) *reaffirming its holding* in *Smith v. State*, 65 S.W.3d 332, 344 (Tex.App.--Waco 2001, no pet.) *that Emerson* does not require that certification be issued by the State. Rather, if it is shown that the officer has extensive training and experience in administering the test, and has been certified through a training course specifically including the administration of the HGN test, the trial court does not abuse its discretion in allowing the officer to testify as an expert on the administration and technique of the HGN test. *See Kerr*, 921 S.W.2d at 502.

In *Emerson*, the court determined that the HGN technique had been applied properly. *Emerson*, 880 S.W.2d at 769. The court examined the record and concluded that the technique, as prescribed by the United States Department of Transportation and the State of Texas, was followed by the officer. *Id*. The officer's testimony indicated that he followed the procedures as outlined in the DWI Detention manual. *Id*. In *McRae v. State*, the defendant contended that the trial court erred in allowing the arresting officer to testify that he signaled six clues, the maximum number possible, because by the officer's own admission, he administered the test incorrectly. 152 S.W.3d 739, 743 (Tex.App.--Houston [1st Dist.] 2004 pet. ref'd.). He testified that he administered all three parts of the HGN test, but at the administrative license revocation hearing, the officer testified he had only administered two portions. He had not conducted the onset-of-nystagmus portion of the test. He also admitted to making several misstatements. For example, his testimony differed concerning the number of seconds it took to conduct the smooth pursuit and maximum deviation portions of the HGN test. *Id*. He also admitted that he made only one pass of each eye rather than two, and that his failure to make two passes of each eye was a violation of the guidelines in the NHTSA manual. *Id*. The court recognized that slight deviations in the timing of the HGN test do not affect either the technique or the admissibility of the HGN evidence. *Id*., *citing Compton v. State*, 120 S.W.3d 375,

378 (Tex.App.--Texarkana 2003, pet. ref'd). But because the officer acknowledged that his administration of the test was invalid, the court could not conclude that the HGN technique was properly applied, nor could it conclude that the error was merely a slight variation. *Id*. at 744.

In *Compton v. State*, the defendant's principal argument was that the officer failed to precisely follow the DWI Detection Manual's instructions for administering both the smooth pursuit and maximum deviation portions of the HGN test. 120 S.W.3d 375, 378 (Tex.App.--Texarkana 2003, pet. ref'd). The defendant complained the officer administered the smooth pursuit test in eleven seconds rather than sixteen seconds. *Id*. He argued that the increased speed amounted to an inappropriate application of the technique, invalidating the results. *Id*. The court rejected the argument because, if accepted, it would effectively negate the usefulness of the tests entirely and any variation in timing would require courts to exclude the results as unreliable. *Id*. As for the maximum deviation portion of the HGN test, the defendant conceded that the officer took nineteen seconds to perform the test, but argued that the test should have taken at least thirty two seconds-- sixteen seconds to test at maximum deviation, plus sixteen seconds to position the eyes. *Id*. at 379. The court found that any variation in the time taken to appropriately position the eyes would have no effect on the reliability of the test and could not form the basis for excluding the results from the evidence presented at trial. *Id*. Thus, it would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's poor performance of the tests. *Id*.

Here, Appellant does not challenge the qualifications of Officer Edington as an expert on the HGN testing. Instead, he complains that Officer Edington improperly administered the test. Both *McRae* and *Compton* involved deviations in the timing of the HGN administration, but *McRae* also involved misstatements made by the officer and a complete failure to administer one portion of the

HGN test. Such is not the case here. Officer Edington deviated in the timing of the tests and, although the trial court opined that the deviations were somewhat significant, our courts have not held that timing errors alone justify exclusion of HGN testimony. Because we find no abuse of discretion, we overrule Point of Error Three and affirm the judgment of the trial court.

July 29, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)