

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-294-CR

SUSAN LEA BRYANT                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Susan Lea Bryant challenges her conviction for driving while intoxicated. In three issues, Bryant contends the trial court erred by denying her motion to suppress the results of her horizontal gaze nystagmus (HGN) test—administered while she was seated—and that the evidence was legally and factually insufficient to support Bryant's conviction. We will affirm.

## II. BACKGROUND

### A. Factual Background

At approximately 11:30 p.m., Denton Police Officer Jason Snailer responded to a dispatch call regarding a specific vehicle[1] traveling southbound on Interstate 35. After spotting the vehicle, Officer Snailer followed it and observed it swerve onto the right shoulder at least twice and almost hit a bridge guardrail. Because of the heavy rain that evening, Officer Snailer testified that he considered such driving to be dangerous and activated his overhead lights to stop the driver. As the vehicle pulled over, it cut off another car entering the highway from an entrance ramp.[2]

Because the vehicle pulled to the side of the highway, Officer Snailer contacted the driver, Bryant, through the passenger side window. Officer Snailer testified that Bryant could not locate her driver's license or insurance and told him she was driving back from Norman, Oklahoma. Officer Snailer said he did not smell any alcohol, but that he never leaned into the vehicle and was too far from Bryant to smell anything when he spoke with her.

Shortly after Officer Snailer stopped Bryant, Denton Police Officer Lisa Martin arrived on the scene in response to the dispatch call. After speaking with Officer Snailer about his observations of Bryant's vehicle on the highway, Officer Martin

---

[1] ... The dispatcher advised Officer Snailer that the concerned caller, driving an orange Schneider semi truck, was following a dark-colored sedan and reported that the sedan "was swerving all over the road and had been since the Oklahoma border."

[2] ... A videotape recording of the stop exists; however, due to a technical problem or malfunction with courtroom equipment, only the first five minutes could be played for the jury.

leaned in Bryant's passenger window to speak with Bryant because it was raining heavily and the highway noise was loud. Officer Martin said that when she first walked up to Bryant's car, Bryant was continuing to search for her license. Officer Martin testified that she noticed a moderate odor of alcohol while talking with Bryant and noticed that Bryant wore a paper wristband on her right wrist that indicates a person is over age 21 in a bar or casino. Officer Martin also testified that Bryant had glassy eyes and that her speech was a little slurred.

Officer Martin asked Bryant how many drinks it took for her to feel the effects of alcohol. Bryant replied that she did not know, that she did not drink very often, but that she had two glasses of wine at a casino about three hours before being stopped. Bryant recited her name, age, date of birth, and driver's license number without any difficulty. Bryant denied feeling any effects of alcohol and said she was just tired. Officer Martin also testified that Bryant admitted to taking Effexor, an antidepressant, that day and that the medication's label warned not to consume alcohol while taking the medication.

Officer Martin explained that she conducted the first of three standardized field sobriety tests, the HGN, while Bryant was seated in the car because it was raining heavily, Bryant appeared elderly, and she did not want to ask Bryant to step out in the rain if Bryant was not intoxicated. Officer Martin explained that the HGN is a valid way to help determine if a person is intoxicated by observing a certain number of clues as a person's eyes track a stimulus. Officer Martin said she observed six

3

out of six clues in Bryant's eyes, that it was likely Bryant was intoxicated, and that she needed to further investigate whether Bryant was intoxicated.

Because Officer Snailer's patrol car was directly behind Bryant's car, Officer Martin removed the videotape from her car's camera and placed it in Officer Snailer's camera so that they could record the rest of the field sobriety tests. By this time the rain had subsided, and Officer Martin asked Bryant to step out and move to the rear of Bryant's car. Officer Martin testified she asked Bryant to stand in a certain spot and Bryant stumbled; but Officer Martin did not recall seeing anything on which Bryant might have tripped.[3] As Officer Martin began to explain the next standardized field sobriety test, Bryant responded that she did not want to do any field sobriety tests. Officer Martin testified she inquired a second time if Bryant would like to try and Bryant refused. At that point, Officer Martin placed Bryant under arrest because she believed Bryant was intoxicated from alcohol or medication or both.

After reading Bryant her statutory warnings, Officer Martin explained that she asked for a blood sample because she knew Bryant had consumed alcohol and taken medication, "so [with] a blood specimen you can get both, and a breath specimen you can only get the alcohol." Bryant declined to give a blood specimen

---

[3] ... The videotape shows Bryant standing barefoot on the shoulder of the road behind her car.

4

and the record does not reflect an attempt by Officer Martin to obtain a search warrant for such a specimen.

**B. Procedural Background**

Bryant was charged by indictment with her second offense of driving while intoxicated. Bryant filed a motion to suppress evidence obtained as a result of her detention and arrest. At the pre-trial hearing, Bryant sought to suppress the results of the HGN test because it was not administered in a standardized manner. After permitting the parties to submit briefs on whether the HGN results were admissible, the trial court denied Bryant's motion. At trial, Bryant entered a plea of not guilty to the offense, but entered a plea of true to the enhancement paragraph alleging that she had been convicted of the previous misdemeanor of driving while intoxicated. A jury found Bryant guilty. The trial court assessed punishment at 365 days in jail with a $700 fine, but suspended the jail sentence and placed her on community supervision for eighteen months. Bryant timely filed a notice of appeal.

## III. ISSUES

Bryant raises three points: (1) the trial court erred by denying her motion to suppress and by allowing Officer Martin's testimony regarding her results of the HGN testing; (2) the evidence is legally insufficient to support Bryant's conviction for driving while intoxicated; and (3) the evidence is factually insufficient. We will therefore apply the abuse of discretion standard of review and the legal and factual sufficiency standards of review set forth below where they are applicable.

5

## IV. ANALYSIS

### A. Motion to Suppress

In her first issue, Bryant contends the trial court erred by denying her motion to suppress evidence of the HGN results because Officer Martin did not administer the test in accordance with the National Highway and Transportation Safety Administration (NHTSA) protocol as outlined in the NHTSA instructor's manual. Specifically, Bryant contends that conducting an HGN test on a seated individual is an invalid technique and that Officer Martin did not properly administer the HGN test because she did not ask Bryant to stand with her feet together and with her hands at her side.

### 1. Abuse of Discretion Standard

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and of the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total

6

deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

7

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### 2. Application of Law to Facts

In *Emerson v. State*, the court of criminal appeals examined the underlying scientific theory of HGN testing and determined that the science is valid. 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction. *Id.* at 765. Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side. *See Webster v. State*, 26 S.W.3d 717, 719 n.1 (Tex. App.—Waco 2000, pet. ref'd). Consumption of alcohol exaggerates nystagmus to the degree it can be observed by the naked eye. *Emerson*, 880 S.W.2d at 766. In determining whether a person's performance of the HGN test suggests intoxication, an officer must look for the following clues in each eye: (1) the lack of smooth pursuit, (2) distinct nystagmus at maximum deviation, and (3) the onset of nystagmus prior to 45 degrees. *McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

8

The *Emerson* court also determined that the HGN testing technique in the NHTSA manual is valid. *See Emerson*, 880 S.W.2d at 768–69. The HGN technique is applied properly when the officer follows the standardized procedures outlined in the DWI Detection Manual published by NHTSA. *See id.*

Bryant contends that the variation from the standardized procedures, because Officer Martin conducted the HGN test with Bryant seated instead of standing, led to unreliable results and an improperly applied technique. However, Officer Martin testified that she complied with the published procedure.

Officer Martin was trained according to the standards in the NHTSA manual, was certified to perform the HGN test, served as field training officer since 2001, trained every recruit in the Denton Police Department since 2004 on field sobriety tests, and testified that she administered the HGN test "thousands of times." She relied on her experience, training, refresher courses, certification as a Standardized Field Sobriety Testing instructor, the 2006 NHTSA manual, and common sense in administering the HGN test to Bryant. Bryant neither challenged Officer Martin's qualifications, nor offered evidence questioning Officer Martin's reliance on her training, refresher courses, or the 2006 NHTSA manual.

Officer Martin admitted that the NHTSA manual does not account for someone sitting in a car—rather than standing—performing the HGN test, but testified she read scientific studies and was taught in field sobriety refresher courses that HGN is not affected by a person standing, sitting, or lying down. She admitted that the

9

2004 NHTSA guidelines instruct an officer to tell the subject to stand with feet together and hands to the side. But Officer Martin said those specific instructions did not apply in this case where Appellant was sitting rather than standing. Officer Martin specifically testified that she administered the HGN test in accordance with her training and the NHTSA manual's procedures regarding the number of seconds and passes per eye.

In *Emerson*, the court of criminal appeals focused on the scientific research regarding the effect of alcohol consumption on human eye movement, without mention of the subject's position when tested. *See Emerson*, 880 S.W.2d at 765–66. Because the *Emerson* court did not differentiate between the science pertaining to the HGN of a person seated versus standing, the trial court did not abuse its discretion in finding the scientific theory behind the HGN to be reliable, nor did it improperly apply the law to the facts in this case. *Id.* at 768; *Etheridge*, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994); *Romero*, 800 S.W.2d at 543.

Additionally, the technique of administering the HGN was applied properly in this case. In *Emerson*, the court referred to a pamphlet used in Texas to train officers to administer the HGN and noted that officers must find the following criteria in the HGN test:

- an inability to pursue smoothly an object, or stimulus, moving sideways across the suspect's field of vision;
- distinct, or pronounced, nystagmus at the eye's maximum horizontal deviation; and

10

- an angle of onset of nystagmus of less than or equal to 45 degrees.

*Emerson*, 880 S.W.2d at 766 (citing DWI Detection and Standardized Field Sobriety Testing at VIII-13, NHTSA (1992)). None of the required factors pertain to a standing or seated position of the subject taking the HGN test.

The record reveals that the trial court had two articles before it, both included in the appendix of the State's trial brief, supporting the validity of an HGN test administered while the subject is seated. The first article, from the November 2003 issue of Optometry Journal, states that as of the article's publication date, the NHTSA did require that a suspect being administered the HGN test stand with feet together and hands at his side. This study, conducted by Karl Citek,[4] O.D., Ph.D., and others, resulted in the finding that the HGN administered in the standing, seated, and supine postures is able to discriminate impairment at a blood alcohol content of 0.08 percent and higher. The testing of the HGN in different positions was conducted in the same manner in all test postures and was consistent with NHTSA guidelines. The study recommends that an officer conducting the HGN of a subject in a seated posture position the subject so that the subject's eyes can be seen easily throughout the test. "This may involve asking the subject to turn the body slightly at the waist, in addition to the head turn used in the current study. Such a minor change in posture will not affect the results." Officer Martin testified that Bryant was

---

[4] ... Officer Martin testified she is familiar with Dr. Citek because she read his studies and attended his seminars.

seated, but turned facing Officer Martin during the HGN test. The second article, published by the NHTSA to assist judges, prosecutors, and law enforcement on the science and law behind the HGN, stated, "The HGN test is very easy to administer . . . . the subject does not have to be standing but can be sitting down."

Officer Martin testified she followed the 2006 NHTSA manual at the time she administered the HGN test, and that the specific instruction argued by Bryant does not apply when administering the HGN to a seated individual. Officer Martin also testified the specific verbal instructions dictated by the NHTSA's 2006 practitioner manual to be given to a suspect prior to administering the HGN do not include an instruction for the subject to place her feet together and her hands at her sides, as Bryant maintained in her motion to suppress and asserts in this appeal.[5]

Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to be given the testimony. *See Kamen v. State*, 305 S.W.3d 192, 196–99 (Tex. App.—Houston [1st Dist.] 2009, no pet. h.); *see also Plouff v. State*, 192 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). The trial court could have found that any variations made by Officer Martin were slight and, therefore, did not affect admissibility of the evidence. *See Kamen*, 305 S.W.3d at 196–99; *see also Plouff*,

---

[5] The specific verbal instructions dictated by the 2006 edition of the Texas Standard Field Sobriety Testing Practitioner Manual appear in the record as Appendix B of the State's trial brief.

192 S.W.3d at 221; *Compton*, 120 S.W.3d at 378. Bryant contends that Officer Martin's administration was not a slight variation from the NHTSA guidelines, but more analogous to *McRae*, and that this court should follow its rulings in *Smothers v. State* and *Tillinghast v. State* and hold that the trial court erred in admitting HGN evidence when the officer did not comply with NHTSA guidelines. *McRae*, 152 S.W.3d at 744; *Tillinghast*, No. 02-04-00553-CR, 2005 WL 2323197, at *1 (Tex. App.—Fort Worth 2005, no pet.); *Smothers*, No. 02-03-00056-CR, 2004 WL 1597652, at *2 (Tex. App.—Fort Worth 2004, no pet.) (not designated for publication).

In *McRae*, the court held that the officer's error was not merely a slight variation in the administration of the HGN test when the officer admitted that he did not administer all three parts of the HGN technique to the appellant, that he did not comply with the NHTSA guidelines because he only made one pass of each eye rather than two passes of each eye, and that he did not conduct a valid HGN test. *McRae*, 152 S.W.3d at 743–44. Similarly, in *Smothers*, we held that the administration of the HGN test results did not meet the *Emerson* requirements for admissibility based upon the officer's admission that he did not administer the test properly by completing the minimum number of passes across appellant's eyes. *Smothers*, 2004 WL 1597652, at *2. In *Tillinghast*, we held that the trial court abused its discretion by admitting evidence of an HGN test without requiring proof from the State that the test was administered in compliance with NHTSA standards,

13

as required by *Emerson*. 2005 WL 2323197, at *3. The officer in *Tillinghast* merely testified that she performed the HGN test, and that she attempted to give clear instructions to appellant during each of the field sobriety tests. *Id.*

Here, unlike the facts in *McRae* and *Smothers*, Bryant does not allege that Officer Martin failed to conduct all three parts of the HGN test or that Officer Martin failed to conduct the proper number of passes across Bryant's eyes. Moreover, Officer Martin testified she administered the HGN test according to the NHTSA guidelines, unlike the officers' admissions to not following the NHTSA guidelines in *McRae* and *Smothers* . And, unlike the officer's testimony in *Tillinghast*, Officer Martin testified to specific details of the HGN test demonstrating that she followed the NHTSA guidelines. Specifically, Officer Martin testified that she held the stimulus at the distance from Bryant's nose required by the NHTSA guidelines, that she conducted the number of passes and held the stimulus for the number of seconds required by the NHTSA guidelines, and that she observed nystagmus during each of the three parts of the HGN test. Thus, we do not find *McRae*, *Smothers*, or *Tillinghast* analogous to the facts of this case.

Instead, we agree with the State's argument that the facts of this case are similar to those in *Plouff* and *Compton*, in which the courts held that slight deviations from the NHTSA manual did not invalidate the HGN results. *Plouff*, 192 S.W.3d at 221; *Compton*, 120 S.W.3d at 378. In *Compton*, the court applied the *Emerson* factors and requirements and held that the officer's slight deviation in the number of

14

seconds taken to conduct HGN from the number "recommended" by the NHTSA manual did not invalidate the test results. *Compton*, 120 S.W.3d at 378. In *Plouff*, the appellant contended, among other things, that the officer failed to satisfy the first part of the HGN test—checking for equal tracking and equal pupil size—because he moved the stimulus across appellant's eyes in four seconds rather than two seconds. *Plouff*, 192 S.W.3d at 221, n.7. The *Plouff* court agreed with the *Compton* court's conclusion that "it would be unreasonable to conclude that any variation in administering the [standardized field sobriety] tests, no matter how slight, could automatically undermine the admissibility of an individual's performance of the tests." *Plouff*, 192 S.W.3d at 221 (citing *Compton*, 120 S.W.3d at 378).

Presuming, without deciding, that Officer Martin varied from the NHTSA standardized procedure by administering the HGN test with Bryant seated, we do not agree with Bryant that such a variation automatically undermined the admissibility of the HGN test and results. *See id.* The trial court was free to believe any or all evidence presented and to make a determination of the facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing. *Id.* at 221–22. At the hearing, Officer Martin testified that she followed NHTSA guidelines with respect to the HGN test and that she attended seminars and read studies that taught her that a police officer is allowed to administer the HGN to a seated subject. We conclude that the trial court did not abuse its discretion in denying Bryant's motion to suppress. Accordingly, we overrule Bryant's first issue.

15

**B. Sufficient Evidence To Support DWI Conviction**

In her second and third points, Bryant contends that the evidence is legally and factually insufficient to support her conviction for driving while intoxicated. Specifically, Bryant argues that the State failed to prove that she was intoxicated by the introduction into her system of alcohol, a controlled substance, a drug, or a combination of two or more of those substances. The State responds that the evidence proved Bryant's loss of normal use of her mental or physical faculties was by reason of her admitted consumption of alcohol, or admitted ingestion of a prescription drug with alcohol consumption—which she admitted the prescription's label warned against combining.

**1. Legal Sufficiency**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and

16

credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 2009); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. However, we may not affirm a conviction based on legal or factual grounds that were not submitted to the jury. *Malik*, 953 S.W.2d at 238, n. 3. The law as authorized by the indictment means the statutory elements of the

17

charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

### 2. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not

18

enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon*, 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### 3. Application of Law to Facts

The offense of driving while intoxicated contains three elements: (1) operation of a motor vehicle; (2) in a public place; (3) while intoxicated. *See* Tex. Penal Code. Ann. § 49.04(a) (Vernon 2009). The Texas Penal Code defines "intoxicated" as

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body;[6] or (B) having an alcohol concentration of 0.08 or more.

Tex. Penal Code Ann. § 49.01(2). The fact that a person does not have the normal use of his mental or physical faculties by reason of introduction of a controlled substance or a dangerous drug into his body may be proved by circumstantial evidence. *See Smithhart v. State*, 503 S.W.2d 283, 284 (Tex. Crim. App. 1974).[7]

The opinion testimony of the arresting officer alone is legally sufficient to support a finding of intoxication. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); *Hartman v. State*, 198 S.W.3d 829, 835 (Tex. App.—Corpus Christi 2006, pet. struck).

Officer Snailer testified that: (1) he responded to a certain stretch of highway per dispatch to look for a specifically described vehicle; (2) he followed Bryant's vehicle and observed it swerve into the right shoulder, swerve over the white line at

---

[6] This definition was included within the indictment, and the application paragraph of the jury charge tracked the indictment.

[7] In *Smithhart*, the Texas Court of Criminal Appeals placed some limits on the admissibility of non-expert testimony on whether a person is under the influence of drugs; but the Court explicitly held that the State could prove this element by circumstantial evidence. *See id.*

least twice, and almost hit a concrete bridge; (3) Bryant's car cut off a vehicle entering the highway as Bryant attempted to pull over after Officer Snailer activated his overhead lights; and (4) Bryant could not locate her driver's license or insurance information upon request.

Officer Martin testified without objection that: (1) she observed Bryant wearing a wristband consistent with having been in a bar; (2) she smelled a moderate odor of alcohol; (3) she had difficulty understanding Bryant a "couple of times" and Bryant's speech was slurred; (4) Bryant had glassy eyes; (5) Bryant admitted drinking two glasses of wine at a casino approximately three hours before the stop; (6) Bryant admitted she took medication that day and that the pill bottle bore a warning label not to consume alcohol; (7) Bryant indicated six out of six clues on the HGN test; and (8) Bryant stumbled as she walked barefoot toward the rear of the vehicle.

A rational fact finder viewing this evidence in the light most favorable to the State could have found beyond a reasonable doubt that Bryant was driving while intoxicated. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We hold, therefore, that the evidence is legally sufficient to support Bryant's conviction for driving while intoxicated.

With regard to the factual sufficiency of the evidence, we are required to review all the evidence in a neutral light. *Neal*, 256 S.W.3d at 275; *Watson*, 204 S.W.3d at 414. In cases based upon circumstantial evidence, it is not required that

21

all facts point to a defendant's guilt; it is sufficient if the combined and cumulative force of all of the incriminating circumstances warrants the conclusion of guilt. *See Courson v. State*, 160 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (en banc)). Here, the record contains evidence that no alcohol or drugs were found in Bryant's car; that there were no breath or blood tests conducted on Bryant; that Bryant told Officer Martin she was tired; that Bryant appeared elderly; that Officer Snailer testified he did not smell alcohol on Bryant; and that Bryant's reckless driving could be attributable to the bad weather conditions.

As "the sole judge of the weight and credibility given to witness testimony," the jury was entitled to give less weight to Bryant's explanation for her erratic driving and more weight to the officers' accounts of the events. Deferring to the jury's role and viewing all the evidence in a neutral light, we therefore hold that the evidence supporting the verdict is not so weak that the factfinder's determination is clearly wrong and manifestly unjust and that conflicting evidence does not so greatly outweigh the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *See Neal*, 256 S.W.3d at 275; *Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414-15, 417; *see also Guyett v. State*, No. 11-08-00003-CR, 2008 WL 3846221, at *1, 3 (Tex. App.—Eastland Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (holding evidence factually sufficient to support DWI conviction, despite testimony that appellant had undergone three brain surgeries and

22

spinal surgery); *Gray v. State*, No. 05-04-01269-CR, 2005 WL 1670715, at *7 (Tex. App.—Dallas July 19, 2005, no pet.) (not designated for publication) (holding evidence factually sufficient, despite testimony that tie rod on appellant's car broke and caused her to lose control, because jury was free to believe officer's testimony); *Payne v. State*, No. 12-02-00312-CR, 2003 WL 22047776, at *9 (Tex. App.—Tyler Aug. 29, 2003, pet. ref'd) (mem. op, not designated for publication) (holding evidence factually sufficient, despite evidence that appellant was ill and not intoxicated on the morning of the accident, because jury was free to believe eyewitnesses' and officers' accounts of what they saw).  We overrule Bryant's second and third points.

## V.  CONCLUSION

Having overruled Bryant's three points, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 15, 2010