**Mark Edward COMPTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00194–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 16, 2003.

Decided Sept. 18, 2003.

Rehearing Overruled Oct. 15, 2003.

---

16. *Id.*

Sharon Levine, Richard Haynes & Associates, PC, for appellant.

Renee Gartland, Assistant District Attorney, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In the early hours of April 8, 2001, State Trooper Steven Baggett observed the truck driven by Mark Edward Compton traveling at a speed Baggett said was approximately eighty miles per hour. Compton slowed, came to a stop at a red traffic light, and then proceeded to drive through the still-red light before Baggett pulled him over to the side of the road. When Baggett approached and began questioning Compton, he noticed Compton's speech was slurred and his breath smelled of alcohol. Compton admitted having earlier consumed two beers, and there was also an open bottle of cold beer in the truck. At this point, Baggett began conducting Standardized Field Sobriety Tests (SFSTs) to determine whether Compton was intoxicated. Based on Baggett's observations and Compton's poor performance of the tests, Compton was subsequently arrested for driving while intoxicated.

After a Gregg County jury convicted Compton of driving while intoxicated, he was sentenced to 180 days' confinement, probated for two years, and ordered to pay an $800.00 fine. On appeal, Compton contends that the trial court erred in denying his motion to suppress and that the evidence presented at trial was both legally and factually insufficient to support his conviction.

*Analysis*

A person commits the offense of driving while intoxicated if he or she operates a motor vehicle in a public place without the normal use of mental or physical faculties due to the introduction of alcohol or other substances into the body. TEX. PEN.CODE ANN. §§ 49.01(2)(A), 49.04(a) (Vernon 2003). In determining whether a motorist is intoxicated, a law enforcement officer with reason to suspect intoxication may conduct a series of field sobriety tests to aid in making arrest decisions. Satisfactory performance of the tests suggests sobriety, while poor performance can serve as a useful indicator of impairment.

At trial, Baggett testified it was only after evaluating Compton's performance of these tests that he concluded Compton was intoxicated and placed him under arrest. Compton contends Baggett failed to properly administer the tests according to the guidelines published in the National Highway Traffic Safety Administration's DWI Detection And Standardized Field Sobriety Testing Student Manual, which is used in training Texas law enforcement officers. *See generally* Nat'l Highway Traffic Safety Admin., U.S. Dep't of Transp., DWI DETECTION AND STANDARDIZED FIELD SOBRIETY

TESTING STUDENT MANUAL (DWI DETECTION MANUAL). Compton reasons that Baggett's failure to strictly comply with the DWI Detection Manual undermined the reliability of the tests, thereby invalidating any evaluation of his performance. Under the *Emerson* three-part reliability test, even if a test's underlying scientific theory and technique applying the theory are valid, improper application of the technique would render the test unreliable. *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim.App.1994) (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992)). Evidence resulting from such a test could not be considered legally or factually sufficient to support a conviction.

## A. Motion to Suppress

In his first point of error, Compton contends the trial court erred in denying his motion to suppress evidence of two field sobriety tests, the horizontal gaze nystagmus (HGN) and one-legged stand tests. We review the trial court's ruling for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In doing so, we view the evidence in the light most favorable to the trial court's ruling, *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim.App.1999), and afford almost total deference to the trial court's determination of the facts supported by the record, *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Determining the admissibility of scientific evidence, however, is a mixed question of law and fact and is reviewed de novo. *Hines v. State*, 38 S.W.3d 805, 808 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (citing *Guzman*, 955 S.W.2d at 87).

In *Emerson*, the Texas Court of Criminal Appeals concluded that both the underlying theory and the technique employed in administering the HGN test made it a sufficiently reliable indicator of intoxication. *Emerson*, 880 S.W.2d at 768–69. Compton does not take issue with the admissibility of tests in general, but argues that, because Baggett did not properly administer the HGN and one-legged stand tests, the results of testing and any related testimony were unreliable and should have been excluded. We disagree.

### 1. HGN Test

The DWI Detection Manual outlines a battery of tests, including the HGN and one-legged stand tests. When administering the HGN test, a law enforcement officer is trained to look for three "clues" in each eye (a total of six for both eyes). Nystagmus, "an involuntary, rapid, rhythmic movement of the eyeball," DORLAND's MEDICAL DICTIONARY 1162 (27th ed.1988), is a natural phenomenon that is exaggerated through the use of alcohol and certain other drugs; identification of four out of six clues serves as a reliable indicator of intoxication and can be used by the officer in determining whether to make an arrest. DWI DETECTION MANUAL, *supra*, at VIII–3, –8; *see Emerson*, 880 S.W.2d at 768 ("The scientific materials addressing the issue have reached the uniform conclusion that the consumption of alcohol has a cognizable effect on human eye movement ... the accuracy of those sources cannot be reasonably questioned.").

■ In determining whether a person's performance of the HGN test suggests intoxication, an officer must look for the following clues in each eye: (1) the lack of smooth pursuit, (2) distinct nystagmus at maximum deviation, and (3) the onset of nystagmus prior to forty-five degrees. DWI DETECTION MANUAL, *supra*, at VIII–6. In other words, if the person's eyes fail to smoothly follow a stimulus across the field of vision, exhibit nystagmus when held as far to the side as possible, or display nystagmus at an angle prior to forty-five de-

grees from looking straight ahead, each will be considered a clue indicating possible intoxication. Baggett testified at trial that Compton exhibited five out of six clues; both eyes lacked smooth pursuit and displayed nystagmus at maximum deviation, while one eye showed signs of nystagmus prior to forty-five degrees.

Compton's principal argument against allowing the results of the HGN test to be introduced into evidence is that Baggett failed to follow precisely the DWI Detection Manual's instructions for administering both the smooth pursuit and maximum deviation portions of the test. Specifically, Compton contends that Baggett administered the test too quickly and that, by moving the stimulus within the field of vision and holding the eyes at maximum deviation for less time than procedure recommends, the results of the test were rendered unreliable under *Emerson* and should not have been considered. Even if Compton's estimate of the time it took for Baggett to perform these tests was accurate, the difference between the time recommended and Compton's estimate is negligible.

The DWI Detection Manual's prefatory language acknowledges that although the tests, when administered under ideal conditions, "will generally serve as valid and useful indicators of impairment," slight variations from the ideal "may have some affect [sic] on the evidentiary weight given to the results." *Preface to* DWI DETEC-TION MANUAL, *supra*. The Texas Court of Criminal Appeals also notes that "[t]he accuracy of the HGN test has been estimated at various levels, depending on such factors as testing conditions and the ability and experience of those conducting the test," thus taking into account that the test will not be administered in strict conformity with an officer's training every time it is performed. *Emerson*, 880 S.W.2d at 767.

It would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's poor performance of the tests.

Compton complains that Baggett administered the smooth pursuit portion of the HGN test in eleven seconds instead of the sixteen seconds prescribed in the DWI Detection Manual (i.e., Baggett moved the stimulus two and a half seconds faster than recommended for each eye). The manual itself only provides approximations of the time required for properly conducting the tests; however, Compton reasons that the slightly increased speed with which Baggett administered the test amounted to an inappropriate application of the technique, invalidating the results. This conclusion is untenable and, if accepted, would effectively negate the usefulness of the tests entirely. Any variation in timing would require courts to exclude the results as unreliable.

Considering the maximum deviation portion of the HGN test, the DWI Detection Manual indicates that an individual's eye should be kept at maximum deviation, or as far to the side as possible, for a minimum of four seconds. With each eye being tested twice, Baggett should have required Compton to maintain his eye position at maximum deviation for the minimum time stated in the manual—four seconds per test, eight seconds for each eye. DWI DETECTION MANUAL, *supra*, at VIII–7. The total testing time for nystagmus at maximum deviation, therefore, should require at least sixteen seconds plus the time necessary to correctly position the eye to be tested. Compton concedes that Baggett took nineteen seconds to perform this test, but argues that the test should have taken at least thirty-two seconds—sixteen seconds to test at maximum deviation plus sixteen seconds to position the

eyes. Unlike the test for smooth pursuit, the movement of the eye from side to side across the field of vision is irrelevant; instead, the test is to observe the eye for distinct nystagmus in a specific position. Any variation in the time taken to appropriately position the eyes would have no effect on the reliability of this test and cannot form the basis for excluding the results from the evidence presented at trial.

### 2. One–Legged Stand Test

■ Another of the tests outlined in the DWI Detection Manual is the one-legged stand test. As suggested by its name, this test allows an individual to demonstrate his or her ability to remain balanced while standing on only one leg. DWI DETECTION MANUAL, *supra*, at VIII–12. Failure to remain balanced during the test or to comply properly with an officer's directions may serve as clues of intoxication. Although one of the requirements for properly administering the test includes instructing someone that his or her hands must remain to the side, Baggett's trial testimony clearly indicated that he failed to do so. Compton subsequently used his hands to help himself balance and, partially for this reason, performed poorly on this test. We must determine whether the trial court's admission of the results of the one-legged stand test was harmless.

■ Under the harmless error standard for nonconstitutional error, we must disregard any error that does not affect a substantial right. TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict," *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct.

1239, 90 L.Ed. 1557 (1946)); however, "[i]f the error had no or only a slight influence on the verdict, the error is harmless," *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998)).

Under the circumstances, even if the trial court's admission of the one-legged stand test results did influence the jury's verdict, we deem that it "had but a slight effect" and that the admission was harmless. *Johnson*, 967 S.W.2d at 417. In fact, Baggett's failure to instruct Compton to keep his arms at his side should have made the test easier to perform. Even with the use of his arms, however, Compton swayed from side to side, unable to balance himself on one leg. Baggett testified that, "even without using his arms to balance, [Compton] still had enough clues on the one-leg stand to be considered intoxicated." Nevertheless, when viewed in light of the other evidence presented at trial, the results of the one-legged stand test are relatively insignificant. Baggett's uncontroverted testimony at trial was that Compton ran a red traffic light; smelled of alcohol; had slurred speech; admitted drinking two beers; had a cold, open bottle of beer in his truck; and became belligerent when Baggett placed him under arrest. Compton also demonstrated five out of six clues on the HGN test, refused to perform the walk-and-turn test,[1] and refused to submit to Intoxilyzer testing.

### B. Legal and Factual Sufficiency

■ Compton contends in his second and third points of error that the evidence presented at trial was both legally and factually insufficient to support his conviction. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether

---

1. Baggett testified that, even while he explained the walk-and-turn test and before

Compton refused to comply, Compton was unable to keep his balance.

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). When reviewing the factual sufficiency of the elements of an offense, however, we view all the evidence in a neutral light and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App.2000) (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996)).

Baggett testified he was certified to administer the field sobriety tests, had been updated on the tests in 2000, and had performed the tests on many occasions. After pulling Compton to the side of the road for speeding and running a red traffic light, Baggett noticed Compton's slurred speech and the smell of alcohol on his breath. These factors—in addition to Compton's admitting drinking two beers and Baggett finding a cold, open beer bottle in the truck—led Baggett to conduct the tests. Considering these factors alongside Compton's poor performance of the tests, we conclude there is sufficient evidence on which a rational trier of fact could have found the essential elements of the crime of driving while intoxicated.

In reviewing a claim that the evidence at trial was factually insufficient to sustain an appellant's conviction, we "consider all the evidence in the record ... comparing the weight of the evidence that tends to prove guilt with the evidence that tends to disprove it" and "necessarily consider any reasonable alternative hypothesis raised." *Rumage v. State*, No. 12–02–00190–CR, 2003 WL 21999347, *3–4, 2003 Tex.App. LEXIS 7232, at *9–10 (Tyler Aug. 20, 2003, no pet. h.) (citing *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999);

*Richardson v. State*, 973 S.W.2d 384, 387 (Tex.App.-Dallas 1998, no pet.)). After listening to Baggett's testimony surrounding Compton's stop and viewing the video recording of Compton's performance of the field sobriety tests, the jury chose to give less weight to Compton's cross-examination, in which he attempted to discredit the reliability of the tests as they were administered in this case. We defer to the jury's role as "the sole judge of the weight and credibility given to witness testimony" and determine that the verdict is not so contrary to the overwhelming weight of the evidence as to be wrong or unjust. *Johnson*, 23 S.W.3d at 6–7.

*Conclusion*

Because there was no error in the trial court's denial of Compton's motion to suppress evidence of the HGN test and the admission of the one-legged stand test results was harmless, we conclude there is both legally and factually sufficient evidence to support the jury's verdict.

We affirm the judgment of the trial court.