Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-08-00701-CR

Dana Lynn **DAVIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR-06-1692
Honorable Spencer W. Brown, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:  June 24, 2009

AFFIRMED

Appellant Dana Lynn Davis was convicted by a jury for the offense of driving while intoxicated.  On appeal, Davis asserts the evidence is legally and factually insufficient to support the conviction.  We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On January 31, 2006, Appellant Davis was seen driving her vehicle erratically.  As she traveled through Kerr County, a witness saw Davis (1) weave across the roadway from shoulder

to shoulder, (2) rear-end another vehicle without stopping, and (3) eventually veer off the road and roll down an embankment. The officers on the scene testified that Davis was disoriented, exhibited slow, slurred speech, and her eyes were glassy, red, and bloodshot. Furthermore, Davis did not appear to know that she had been involved in any accident. At trial and on appeal, Davis asserts her behavior was a result of: her being very tired at the time of the accident, her emotional state after the accident, and her concussion from the rollover accident.

DRIVING WHILE INTOXICATED

Davis contends that the testimony at trial negates the jury's conclusion that she was driving while intoxicated. The State responds that direct evidence proved Davis's loss of normal use of her mental or physical faculties and that circumstantial evidence proved Davis's loss was by reason of her ingestion of alcohol.

## A. Elements of the Offense

A person commits the crime of driving while intoxicated (DWI) "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). The Texas Penal Code defines "intoxicated" as

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> (B) having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. § 49.01(2) (Vernon 2003). Davis does not dispute that she was operating a motor vehicle in a public place. We must, therefore, determine whether the evidence sufficiently demonstrates that Davis was intoxicated by "not having the normal use of [her] mental or physical faculties [due to] the introduction of alcohol . . . into [her] body." *See id.*

A person's failure to have the normal use of her mental or physical faculties may be proven by circumstantial evidence. *See Smithhart v. State*, 503 S.W.2d 283, 284 (Tex. Crim. App. 1973). Additionally, when considering the intoxication element, erratic driving and a collision are instances of impaired judgment that can be sufficient to establish that a driver did not have the normal use of her mental faculties. *Chaloupka v. State*, 20 S.W.3d 172, 175 (Tex. App.—Texarkana 2000, pet. ref'd).

## B. Legal Sufficiency

### 1. *Standard of Review*

When a party attacks the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). Moreover, when faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the verdict. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (en banc); *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).

### 2. *Evidence Presented*

The State's case relied on the testimony and evidence solicited from four different witnesses. Tony Gonzales testified that as he left work, he noticed Davis in her vehicle, at an intersection, and that she appeared to be asleep behind the wheel. Gonzales explained that Davis was stopped at a green light for an extended period of time, with her head down, against her chest. When Davis began to drive, Gonzales testified that she proceeded to turn right and hit the curb, causing her to swerve immediately to the other side of the road and into oncoming traffic. Gonzales further relayed that, at that point, he first contacted 911. Gonzales proceeded to follow

Davis as she "swerved back and forth" and made a series of sharp turns. According to Gonzales, Davis continued to drive "all over the road"—from the shoulder on the right, past the road, and into the oncoming traffic on her left.

Gonzales further testified that Davis, after entering IH-10, exceeded speeds of eighty or eighty-five miles per hour and then slowed to thirty miles per hour, "at least eight to ten times." Davis continued to travel from one shoulder and across to the other shoulder, even hitting a guardrail over one of the bridges and the grass on the shoulder a couple of times. Gonzales also witnessed Davis drive into the back of another vehicle, shattering the rear windshield on the vehicle, and continue to travel down IH-10. Thereafter, Gonzales witnessed Davis swerve off the shoulder of the road, completely rolling her vehicle.

Sergio De La Rocha, the driver of the vehicle hit by Davis, testified that he saw Davis's vehicle approach through his rear-view mirror just before his car was hit. De La Rocha explained he was traveling approximately sixty miles per hour at the time of the accident. When Davis did not stop, De La Rocha followed her vehicle in order to obtain the license plate number.

Kerr County Deputy Eric Piper arrived shortly after the rollover accident. He first verified that Davis was uninjured. After Davis was out of her vehicle, Deputy Piper noted that she appeared disoriented, had bloodshot and glassy eyes, used slow, slurred speech and that she was using her vehicle for balance. Texas Department of Public Safety Trooper Adam Sweaney, the officer assigned to work the rollover accident, also testified before the jury. He described Davis as disoriented and unsteady on her feet, and as having red, bloodshot, glassy eyes, and slurred speech. He also testified that she smelled of alcohol. Trooper Sweaney testified that Davis did not appear to know that she had been in an accident and, when requested, refused both field sobriety tests and a breathalyzer test. During Trooper Sweaney's testimony, the jury saw a

videotape of the incident taken from Trooper Sweaney's patrol vehicle. Thus, the jury viewed Davis's demeanor, emotional state, and refusal to cooperate with the officers. *See Compton v. State*, 120 S.W.3d 375, 380 (Tex. App.—Texarkana 2003, pet. ref'd) (concluding the evidence was legally and factually sufficient to support a DWI conviction when the jury heard the trooper's testimony surrounding the stop and viewed the video-recording of the appellant's performance of field sobriety tests).

The defense presented evidence from Davis's mother that Davis suffered a concussion during the rollover accident and from Sue Beth Gibson, a friend of the family, that Davis had only had one, maybe two, glasses of wine over a three or four hour period before the incident. Additionally, Gibson testified that Davis left her residence sometime after 9:30 p.m. and that the accident occurred approximately an hour later.

### 3. Analysis

Davis challenges the evidence described above by pointing to evidentiary conflicts, which we presume the jury resolved in favor of the State. *See Turro*, 867 S.W.2d at 47; *Fuentes*, 991 S.W.2d at 271. More specifically, Davis emphasizes the "glaringly inconsistent" testimony by the officers about whether Davis smelled of alcohol. Deputy Piper did not note any odor of alcohol on Davis while Trooper Sweaney testified that Davis smelled of alcohol. Because the conflict ultimately calls into question the officers' credibility, it is an issue solely within the province of the jury. *See Fuentes*, 991 S.W.2d at 271; *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Moreover, the witnesses' observations regarding Davis's slurred speech, bloodshot eyes, unsteady balance, and disorientation all constitute evidence of intoxication. *See Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim. App. 1985) (enumerating a nonexclusive list of signs recognized as evidence of intoxication, including odor of alcohol on

person or breath, drowsiness, unsteady balance, staggered gait, slurred speech, and bloodshot eyes). Indeed, the testimony of Trooper Sweaney is sufficient, as a matter of law, to substantiate the element of intoxication. *See Little v. State*, 853 S.W.2d 179, 183 (Tex. App.—Corpus Christi 1993, no pet.) ("The uncorroborated testimony of an arresting officer is sufficient to prove the element of intoxication.").

The direct evidence recited above was legally sufficient for the jury to form a firm conviction or belief that Davis did not have the normal use of her mental or physical faculties. We, therefore, overrule Davis's legal sufficiency challenge.

## C. Factual Sufficiency

### 1. Standard of Review

In a factual sufficiency review, we review of all the evidence in a neutral light and set aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *See Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See Watson*, 204 S.W.3d at 417.

### 2. Analysis

Davis highlights the following evidence in support of her contention that the evidence was factually insufficient to support a finding of intoxication:

(1) Davis's extreme emotional state, described by the testimony as hysterical accounts for her glassy, bloodshot eyes;

(2) the fact that she was exhausted after a long day as an explanation of her "bad driving"; and

(3) the concussion she suffered, as a result of the rollover accident, as the reason for her disorientation and unsteady balance.

The jury, however, was free to reject Gibson's testimony that Davis only had two glasses of wine on the night in question and that Davis was not impaired when she left her home. Furthermore, the jury could conclude that Davis's behavior was the product of intoxication, rather than a product of her physical ailments or emotional state. Consequently, we cannot say that the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 417; *Johnson*, 23 S.W.3d at 11.

## CONCLUSION

Although Davis did not take any field sobriety tests, there was evidence that Davis was weaving all over the road, had bloodshot eyes, was slurring her speech, and was stumbling as she exited her vehicle on the night in question. The jury had evidence upon which it could reasonably conclude Davis was guilty of the charged offense. Furthermore, we cannot say this appellate record leads us to conclude that a rationale jury could not have found the essential elements beyond a reasonable doubt or that the jury's verdict was manifestly unjust, or against the great weight and preponderance of the evidence. We, therefore, conclude the evidence was both factually and legally sufficient to find that Davis operated a motor vehicle in a public place while intoxicated. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH