Opinion filed October 21,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00017-CR

                                                    __________

 

                                 DICKEY RAY MAUPIN, Appellant

                                                             V.

                                      STATE OF TEXAS, Appellee



 

                                   On
Appeal from the 371st District Court

 

                                                          Tarrant
County, Texas

 

                                                  Trial
Court Cause No. 1097900D

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Dickey Ray Maupin of felony driving while intoxicated, and the
trial court sentenced him to fifteen years confinement.  We affirm.

I.  Background
Facts

            Benbrook
Police Officer J. Hughes stopped Maupin for a traffic violation.  Officer
Hughes smelled alcohol when he approached Maupin’s vehicle and on Maupin’s
breath when they talked.  Maupin told Officer Hughes that he had drunk one
beer.  Officer Hughes noticed that Maupin’s speech was slightly slurred, his
eyes were red, and his balance was unsteady. Officer Hughes decided to conduct
a DWI investigation. 

            Officer
Hughes first performed a horizontal gaze nystagmus (HGN) test.  Maupin exhibited
all six possible signs of intoxication.  Officer Hughes then had Maupin perform
a walk-and-turn test.  Maupin had balance problems and exhibited six out of a
possible eight signs of intoxication.  Maupin attempted the one-leg stand test
but was unable to complete it because he swayed and kept dropping his foot.  Officer
Hughes arrested Maupin and searched his vehicle.  He found one open beer can
and two empties.  Maupin was taken to the Benbrook police station and was
administered a breath test.  This did not register a BAC reading because Maupin
only imitated blowing into the intoxilyzer.

II.  Issues

            Maupin
challenges his conviction with three issues.  Maupin contends that the trial
court abused its discretion by admitting the HGN test results because Officer Hughes
was not certified to administer the test, because he was not qualified to
testify as an expert witness, and because he did not follow standard testing
protocol.

III.  Discussion


            Maupin had appointed counsel,
but he filed a pro se motion to suppress the State’s sobriety test.  Trial
counsel filed a motion in limine and requested a hearing prior to the admission
of any HGN test evidence to determine if Officer Hughes was qualified to
administer the test and if the test was properly administered.  The trial court
conducted a pretrial hearing during which Officer Hughes testified and
described his training and experience with the HGN test and the procedures he
followed when testing Maupin.  At the conclusion of the hearing, Maupin
objected to any HGN test evidence contending that the test was improperly
administered.  The trial court characterized Maupin’s objection as a challenge
to the weight rather than admissibility of the evidence and overruled it. 

            A. Standard of Review.

            We
review the trial court’s ruling on the admissibility of evidence under an abuse
of discretion standard.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985).  Appellate courts will uphold a trial court’s
admissibility decision when that decision is within the zone of reasonable
disagreement because trial courts are in the best position to decide questions
of admissibility.  Cameron v. State, 241 S.W.3d 15, 19 (Tex. Crim. App.
2007).  An appellate court may not reverse a trial court’s decision regarding
the admissibility of evidence solely because the appellate court disagrees with
the decision.  Id. A trial court abuses its discretion when its decision
lies outside the zone of reasonable disagreement.  Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

            B. 
Did Maupin Preserve the Issues He Advances on Appeal?

            Maupin
complains in Issues One and Two that the trial court abused its discretion by
admitting HGN test evidence because Officer Hughes was not properly certified
to administer the test and because Officer Hughes was not qualified to testify
as an expert witness.  The State responds that these issues are disparate from
Maupin’s trial court objection and, therefore, have not been properly preserved. 
We agree.

            To
preserve error for appellate review, the complaining party must make a timely
objection that states the grounds for the ruling with sufficient specificity to
make the trial court aware of the complaint.  Tex.
R. App. P. 33.1(a)(1)(A).  The complaint raised on appeal must comport
with the objection made at trial.  Dixon v. State, 2 S.W.3d 263, 273
(Tex. Crim. App. 1998).  An objection stating one legal basis may not be used
to support a different legal theory on appeal.  Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990).

            At
the beginning of the pretrial hearing, the prosecutor said: “I want to clarify
with defense counsel, essentially what we’re doing is a motion to suppress the
HGN; is that right?”  The trial court added: “I understand it to be a Daubert[1]
hearing, Daubert Emerson.”[2] 
Defense counsel responded by saying: “Yes.  And that actually is the same
thing, Your Honor, because if we prevail in the motion, then you would suppress
any findings on the HGN.  I think we’re using different words, but it’s the
same vehicle.”  At the conclusion of the evidence, defense counsel made the
following argument:

            [DEFENSE
COUNSEL]:  And, Your Honor, first of all, as there was no request to take
judicial notice of the law regarding HGN as an expert – excuse me – as a
reliable science, under Daubert, it has to be a recognized theory that –

 

            TRIAL
COURT:  Well, and I – as a gatekeeper, I do have notice of the laws of Texas
and the case of Emerson specifically.  So let’s get beyond that
argument.

 

            [DEFENSE
COUNSEL]:  The officer himself testified that it’s not an exact science.

                           

            Second
of all, he didn’t just vary a little bit, which the law allows, on the
administration of the HGN.  Twenty-five percent is a significant number.  If it
had been twenty-five percent over, the manual says that’s all right because
there are minimum times that he has to do.  He did not do that.  The manual
says you have to do this properly, and even Daubert says, if you don’t
do it properly, then it’s inadmissible.  He didn’t do it properly.

 

            It says
he’s supposed to keep his head still, specifically keep your head still.  He
didn’t do that.  He let his eyes – let his head move.  There again, that is not
per the protocol of the HGN.  Giving the test in forty-three seconds versus
sixty-four is significant.  There again, that is not incidental.  That would
make the test invalid. And both those – either one separately or both combined
would make this test not administered properly.  Therefore, it should be
inadmissible and excluded.

 

Maupin’s objection
went strictly to Officer Hughes’s testing protocol.  He did not object to
Officer Hughes’s credentials to administer or testify about the test.  Because
Maupin’s first two issues do not comport with his trial objection, they have
not been preserved and are overruled.

            C.
 Did the Trial Court Abuse its Discretion by Admitting HGN Test Evidence? 

            Maupin
contends in his third issue that the test’s validity was impermissibly
compromised because Officer Hughes did not follow standardized testing
procedures as established by the National Highway Traffic Safety Administration
(NHTSA) DWI Detection and Standardized Field Sobriety Testing Student Manual.  The
State responds that the trial court did not abuse its discretion because it had
sufficient information to conclude that the test results were reliable.

            Texas
law unequivocally holds that the results of a properly administered HGN test
are admissible and that a test performed in compliance with the NHTSA’s DWI
Detection Manual is a properly administered test.  Emerson v. State, 880
S.W.2d 759, 768-69 (Tex. Crim. App. 1994).  Maupin describes the NHTSA protocol
as a mandatory guideline and argues that Officer Hughes’s testimony was
inadmissible because he moved the stimulus further than proscribed in the
manual and because he completed the test in less than the minimum permitted
time.

            Officer
Hughes testified that he was given a manual when he was trained to administer
the HGN test.  This manual states that test subjects are to keep their heads
still.  Officer Hughes testified that he instructed Maupin to keep his head
still during the test but that Maupin moved his head with the stimulus and,
thus, that he was required to move the stimulus further than normal.  Officer
Hughes testified that neither the manual nor his training covered what to do
when the subject moved his head during the test.  He agreed that he had not
been trained to simply keep moving the stimulus.  Officer Hughes also testified
that he was trained to perform each component of the test for a minimum number
of seconds and that the test should take at least sixty-four seconds.  However,
according to the videotape of the stop, he completed the test in as little as
forty-three seconds.  Nonetheless, Officer Hughes maintained that the test
results were valid.  He testified that the HGN test is designed for field use
and that he cannot watch a clock and the subject’s eyes.

            Maupin
did not offer any evidence during the pretrial hearing.  The trial court,
therefore, was faced with unrefuted testimony that the test results were
valid.  Conversely, it was also undisputed that Officer Hughes performed the
test in less time than called for in the NHTSA manual and that there is no
protocol for testing subjects unable or unwilling to keep their head still. 
The question we must address is whether the trial court had the discretion to
decide that these departures from the manual went to the weight of the evidence
rather than its admissibility.

            Texas
courts have consistently held that slight variations from the manual’s testing
protocol do not render HGN test results inadmissible but may affect the weight
to be given the testimony.  See, e.g., Kamen v. State, 305 S.W.3d 192,
196-99 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d); see also Plouff v.
State, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.). 
Permissible variations include performing the test faster than proscribed.  See,
e.g., Compton v. State, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet.
ref’d).  In Compton, the investigating officer performed the smooth
pursuit portion of the HGN test in eleven seconds instead of sixteen and the
maximum deviation in nineteen seconds rather than thirty-two.  The court found
that this did not render the test inadmissible, noting that the manual provides
approximations of the time required to properly administer the test and that,
for the maximum deviation test, any variation in the time taken to
appropriately position the eye would have no effect on the reliability of the
test.  Id. at 378-79.  

            Texas
courts have, however, held that noncompliance with the NHTSA guidelines renders
the evidence inadmissible.  See, e.g., McRae v. State, 152 S.W.3d 739,
743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).  In McRae, the
court held that the officer’s error was not a mere slight variation in test
administration when the officer admitted that he did not administer all three
parts of the HGN test, that he did not comply with the manual because he made
only one pass of each eye rather than two, and that his test was not valid.  Id.
at 743-44.

            The
trial court did not err by finding Officer Hughes’s testimony admissible.  The
test was performed quicker than the manual proscribes, but the variance was
comparable to the leeway courts have previously afforded officers to reflect
the fact that this is a field test.  Moreover, there was no attempt to exclude
that portion of the test for which time discrepancies can have no impact.  The
trial court could reasonably conclude that Officer Hughes’s decision to move
the stimulus further when Maupin refused to keep his head still during the exam
was appropriate.  There was no evidence to suggest that this impacted the
test’s validity, and if Maupin’s position were accepted, an individual could
always defeat the test merely by moving his head.

            If
the trial court did abuse its discretion, any error was harmless.  There was
considerable evidence Maupin was intoxicated in addition to the HGN test. 
Officer Hughes smelled alcohol coming from Hughes’s vehicle as he approached
and on Maupin’s breath when they talked.  Maupin failed the walk-and-turn test
and was unable to perform the one-leg stand test for lack of balance.  Maupin’s
eyes were bloodshot, his speech was slurred, and he was unsteady on his feet. 
He admitted to drinking.  Officer Hughes found one open and two empty beer cans
in Maupin’s vehicle.  Maupin was at a minimum confused about where he was going
to and where he had come from.  His behavior at the scene and police department
was consistent with intoxication – in fact counsel conceded that his behavior
rendered him guilty of being a felony jerk, and he imitated blowing into the
intoxilyzer.  Issue Three is overruled.

IV. 
Conclusion

The
judgment of the trial court is affirmed.  

 

 

                                                                        RICK STRANGE

October 21, 2010                                                        JUSTICE

Do not
publish.   See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993).

 





                [2]Emerson v. State,
880 S.W.2d 759 (Tex. Crim. App. 1994).