**Affirmed and Memorandum Opinion filed July 30, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00311-CR

### ROBERT VILLARREAL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 07CR2810**

## M E M O R A N D U M   O P I N I O N

Appellant Robert Villarreal appeals the trial court's order adjudicating his guilt, asserting that the trial court abused its discretion by finding that he violated at least one of the terms and conditions of his community supervision. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of failure to stop and render aid. Appellant pleaded guilty to the offense, and the trial court

deferred adjudication of guilt, placing appellant on community supervision for four years.

The State, in February 2012, moved to adjudicate appellant's guilt, alleging in a third amended motion to adjudicate guilt that appellant had violated various terms and conditions of community supervision. The trial court conducted a hearing on the motion. Appellant pleaded "not true" to all of the violations alleged in the State's motion to adjudicate. After an evidentiary hearing, the trial court found eight violations by appellant of the terms and conditions of community supervision. The trial court revoked appellant's community supervision, adjudicated appellant's guilt, and sentenced appellant to three years' confinement. On appeal, appellant asserts that the trial court abused its discretion in revoking appellant's community supervision because the evidence at the hearing was insufficient to prove by a preponderance of the evidence that appellant committed any of the eight violations found by the trial court.

### ISSUES AND ANALYSIS

In eight issues, appellant asserts that the evidence at the hearing was insufficient to prove by a preponderance of the evidence that appellant committed each of the eight violations found by the trial court. We review the trial court's order revoking community supervision for an abuse of discretion. *See Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). When a trial court finds several violations of the terms and conditions of community supervision, the trial court does not abuse its discretion by revoking community supervision if there is proof by a preponderance of the evidence that appellant committed at least one of the violations. *See Bryant*, 391 S.W.3d at 93; *Rickels*, 202 S.W.3d at 763. A finding of such a violation is supported by a preponderance of the evidence if the greater weight of the credible

2

evidence before the trial court creates a reasonable belief that the defendant has violated one of the terms and conditions of community supervision. *See Rickels*, 202 S.W.3d 763–64.

### *Driving While Intoxicated*

In his first issue, appellant asserts that the evidence did not prove by a preponderance of evidence that he violated the terms and conditions of community supervision by committing the offense of driving while intoxicated on or about January 13, 2011 in Galveston County, Texas. A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a) (West 2013). The term "intoxicated" means (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance into the body, or (2) having an alcohol concentration of 0.08 or more. *Id.* at § 49.01(2) (West 2013). Appellant complains that the State did not present any evidence that appellant was intoxicated.

The record reflects that a state trooper, on routine patrol, observed a vehicle traveling at a high rate of speed. According to the officer's radar device, the vehicle was traveling at 96 miles-per-hour in a zone with a posted speed limit of 65 miles-per-hour. The officer also observed the vehicle weave both out of its lane, crossing the center line of the road, and within its lane as it traveled. The officer initiated a traffic stop of the vehicle along the roadway. The officer identified appellant in court as the driver of the vehicle.

According to the officer, although he asked several times for a driver's license, appellant appeared confused about the requests and asked, "Huh?" Appellant did not produce a driver's license and offered a "confused" response

about why he could not furnish his driver's license, stating, "They took it from me," in an apparent reference to appellant's attorney who took appellant's suspended driver's license. Appellant was able to recite his driver's license number for the officer without difficulty. The officer testified that appellant's speech was slurred and slow. The officer observed appellant had red, glassy eyes and detected the strong odor of alcohol coming from within the vehicle. The officer believed that further investigation and a roadside interview were necessary.

The officer stated that he twice asked appellant to exit the vehicle, and appellant complied on the second request, staggering slightly as he exited the vehicle. According to the officer, appellant appeared to sway a little when he stood behind the vehicle to perform field-sobriety tests. In conducting a horizontal gaze nystagmus (HGN) sobriety test, the officer testified that appellant exhibited six clues of intoxication.

The officer attempted to conduct a walk-and-turn sobriety test, and explained the instructions of the test to appellant. But appellant did not appear to understand the instructions. According to the officer, appellant began performing the test and stepped off of the line, failing to maintain his balance, before he refused to continue the test. The officer testified that when he asked appellant how much alcohol appellant had consumed, appellant asked the officer to call appellant's father, who was the officer's colleague and personal friend, and referred to an attorney. The officer placed appellant under arrest and transported appellant to a police station. Evidence in the record reflects that the officer requested a specimen of appellant's breath but that appellant refused to allow the taking of a specimen.

A video, showing appellant's vehicle weaving out of its lane and the traffic stop, was admitted into evidence and played in open court. When the State asked

4

whether the officer, based on his training and experience, had formed the opinion that appellant was intoxicated, the officer agreed, stating that he had "formed the opinion that [appellant] was impaired." The officer noted the following circumstances which led to his conclusion: appellant's weaving, the road-side interview, the results of the standard field-sobriety test attempts, the odor of alcohol emitted from appellant's breath, appellant's slurred speech, appellant's driving, the way appellant swayed when he walked, and appellant's bloodshot, glassy eyes. The officer, on cross-examination, characterized appellant's stumbling, swaying, glassy and bloodshot eyes, refusal to submit a breath test, and failure to cooperate in performing field-sobriety tests as signs weighing in favor of intoxication.

The record shows that the State proved by a preponderance of the evidence that appellant violated the terms and conditions of community supervision by committing the offense of driving while intoxicated on or about January 13, 2011 in Galveston County, Texas.[1] *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (noting that a defendant's refusal to submit to a breath test is admissible under Texas Transportation Code section 724.061 as tending to show the defendant's consciousness of guilt); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (enumerating nonexclusive list of signs recognized as evidence of intoxication, including slurred speech, bloodshot eyes, odor of alcohol on the person, unsteady balance, and staggered gait); *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (reasoning that an officer's testimony that a

---

[1] Appellant complains that, although the record reflects that he exhibited six clues of intoxication when submitting to the HGN test, the evidence does not reflect what those six clues were. But, even ignoring the evidence regarding the HGN test, the remaining evidence in the record still shows that the State proved this violation by a preponderance of the evidence.

5

person was intoxicated provided sufficient evidence to establish element of intoxication); *Paschall v. State*, 285 S.W.3d 166, 177–78 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding evidence sufficient based, in part, on officer's testimony regarding defendant's performance on field-sobriety tests, videotape of field sobriety tests, and officer's opinion that defendant had lost normal use of his mental and physical faculties, indicating his intoxication); *Compton v. State*, 120 S.W.3d 375, 380 (Tex. App.—Texarkana 2003, pet. ref'd) (concluding that evidence was sufficient to support DWI conviction when jury heard officer's testimony surrounding stop and viewed video-recording of defendant's performance of field-sobriety tests); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (concluding that officer's testimony "that an individual is intoxicated is probative evidence of intoxication"). *See also* Tex. Transp. Code Ann. § 724.061 (West 2013) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial."). Thus, the trial court did not abuse its discretion in finding that appellant committed this violation and revoking appellant's community supervision. *See Bryant*, 391 S.W.3d at 93; *Rickels*, 202 S.W.3d at 763. Accordingly, we overrule appellant's first issue, and we need not address appellant's other appellate issues.

We affirm the trial court's judgment.

/s/      Kem Thompson Frost
Justice

Panel consists of Justices Frost, Brown, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).