Opinion filed October 21, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00358-CR

_____

**JOSE DAVID ROBLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 13445-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jose David Robles of driving while intoxicated and assessed his punishment at confinement for a term of ten years in the Institutional Division of the Texas Department of Criminal Justice. The jury also assessed a fine of $2,000. In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction. We affirm.

*Background Facts*

The State charged Appellant by indictment with felony driving while intoxicated, in a public place, "by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, and any other substance into his body." *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp. 2020). Additionally, the indictment alleged that Appellant "had previously been convicted two or more times for an offense relating to the operating of a motor vehicle while intoxicated." *See id.* § 49.09(b)(2).

On July 18, 2018, Abilene Police Officer Mark Thomas received a call for service informing him of a major accident at the intersection of South 1st Street and Grape Street. Prior to arriving at the scene, Officer Thomas learned that one of the drivers involved in the accident had fled northbound on Grape Street and was wearing a blue shirt. Instead of going directly to the scene, Officer Thomas began searching for the fleeing driver in the surrounding area. Officer Thomas located Appellant walking down an alley off North 5th and Grape.

Appellant ignored Officer Thomas's first attempt to stop him and continued walking. When Appellant finally stopped, Officer Thomas noticed that Appellant smelled like alcohol, that his eyes were bloodshot, and that he stumbled when he walked. In Officer Thomas's experience, these were signs of intoxication. Appellant then gave Officer Thomas his name but was evasive with his other answers to Officer Thomas's questions. Officer Thomas testified that Appellant's evasiveness was a sign of diminished mental faculties. Officer Thomas confirmed Appellant's name after other Abilene police officers found Appellant's driver's license in the wrecked vehicle.

When first asked about the accident, Appellant responded to Officer Thomas by saying: "[W]hat accident[?]." When asked again, Appellant responded that a man

2

named "J.J.," who Appellant said was the actual driver, told him to exit the car. Officer Thomas later determined, based on an eyewitness account, that Appellant was the sole occupant of the car. Officer Thomas never identified anyone involved in the case named "J.J."

Officer Thomas decided to perform field sobriety tests on Appellant based on Appellant's slurred speech, bloodshot eyes, difficulty walking, and evasive answers. In this regard, Officer Thomas testified that he had received extensive training to perform field sobriety tests and that he was certified to administer them. Officer Thomas first administered the horizontal gaze nystagmus test (HGN). Officer Thomas explained that this test looks for the involuntary movement an eye makes when a person is intoxicated. During this test, Officer Thomas had to advise Appellant multiple times to look at his finger rather than his face. Officer Thomas observed Appellant exhibit all six possible clues consistent with a failed HGN test.

Next, Officer Thomas moved Appellant to a flat, grassy surface and administered the walk-and-turn test. Officer Thomas explained that this test contains two parts, each with four clues. In order to pass this test, a person must not exhibit two or more clues. During this test, Officer Thomas did not observe any injuries on Appellant that would affect his performance on this test. Appellant exhibited the following three clues of intoxication during the walk-and-turn phase of the test: difficulty walking heel to toe; failing to count out loud his steps; and difficulty turning. From these clues, Officer Thomas concluded that Appellant failed this test. However, during his testimony, Officer Thomas testified that he had previously had to retract a fourth clue that he had originally found.

Finally, Officer Thomas administered the one-leg stand test. Officer Thomas explained that this test requires people to stand on one leg, elevate their other leg six inches off the ground, and count out loud to thirty. Appellant did not mention any previous injuries that would affect his performance on this test, and he exhibited

3

three of four clues of intoxication. Officer Thomas concluded that Appellant failed the one-leg stand test.

Officer Thomas placed Appellant under arrest for driving while intoxicated because Appellant failed all three field sobriety tests. Officer Thomas then asked Appellant to submit a breath sample to determine his blood alcohol content (BAC). After Appellant denied the request, Officer Thomas then sought a search warrant to draw Appellant's blood to determine his BAC. By the time Officer Thomas received the search warrant, it was over two hours after the accident. Moreover, when medical personnel finally drew Appellant's blood, it had been nearly three hours since the accident. While medical personnel were attempting to draw Appellant's blood, Appellant was uncooperative and had to be restrained. Officer Thomas stated that Appellant's conduct during the blood test was a sign of intoxication.

The Texas Department of Public Safety Crime Lab in Abilene (TDPS) later received and analyzed Appellant's blood. Their analysis showed that at the time his blood was drawn, Appellant's BAC was .063 plus or minus .003 grams of alcohol per 100 milliliters of blood. However, Sarah McGregor, a forensic scientist with TDPS, further testified that a person's elimination rate, the rate in which a person's body eliminates alcohol, is on average .015/.025 grams of alcohol per hour for a social drinker.

Jaden Williams and Cheyenne Yarger witnessed Appellant's collision. Yarger testified that she saw a pickup turning eastbound and a white car, heading westbound, and she observed the white car run through the red light and collide with the pickup. Williams testified that Appellant's white car was "speeding, like very crazy." Following the collision, Williams stated that he saw Appellant get out of his car, panic, and leave the scene. Yarger testified that Appellant was not walking in a straight line when he was attempting to leave the scene, which, in her experience as a registered nurse and alcohol abuse counselor, indicated that Appellant was

4

intoxicated. In addition, both witnesses positively identified Appellant after Officer Thomas stopped him.

*Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence supporting his conviction for driving while intoxicated (DWI). Specifically, Appellant contends that there is insufficient evidence that he was intoxicated because Officer Thomas did not administer the field sobriety tests correctly and because his BAC test results were inconclusive.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson* 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

The term "intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or having an alcohol concentration of 0.08 or more. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011). We first note that the field sobriety tests and the BAC test results were not the only evidence of intoxication in this case. Officer Thomas testified that prior to administering any tests, Appellant smelled of alcohol; his eyes were bloodshot; he stumbled when he walked; and his speech was slurred. "The Court of Criminal Appeals has identified several characteristics that constitute evidence of intoxication, including slurred speech, bloodshot or glassy eyes, unsteady balance, a 'staggering gait,' and the odor of alcohol on the person or on [his] breath." *Zill v. State*, 355 S.W.3d 778, 785 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Cotton v. State*, 686 S.W.2d 140, 142–43 & 142 n.3 (Tex. Crim. App. 1985)); *see Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010).

Officer Thomas further testified that his pretest observations of Appellant were signs of intoxication. Generally, the testimony of an officer that a person is

intoxicated provides sufficient evidence to establish intoxication. *See Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating that officer's testimony that individual is intoxicated is probative evidence of intoxication). Furthermore, Yarger testified that Appellant appeared to be intoxicated. In this regard, Yarger was not a mere layperson, but rather she is a registered nurse and alcohol abuse counselor.

Juries may consider circumstantial evidence in determining whether a defendant is intoxicated. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Both flight and refusal to submit to a breath test are relevant to show a consciousness of guilt. *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim App. 2008) (breath test); *Clayton*, 235 S.W.3d at 780 (flight). When asked about the collision, Appellant stated that a man named "J.J." was driving. However, Officer Thomas was unable to identify any person involved in the case named "J.J." When Officer Thomas asked Appellant to submit a breath sample, he refused, and when Officer Thomas took Appellant to have his blood drawn, Appellant did not cooperate.

In many respects, Appellant's contentions about the field sobriety tests results are akin to a challenge to their admissibility as evidence at trial. *See Maupin v. State*, No. 11-09-00017-CR, 2010 WL 4148343, at *3-4 (Tex. App.—Eastland Oct. 21, 2010, pet. ref'd) (mem. op., not designated for publication). In this case, Officer Thomas's findings from his performance of the field sobriety tests were admitted at trial. When conducting a sufficiency review, we must consider all of the evidence admitted at trial, even if the admission was improper. *Winfrey*, 393 S.W.3d at 767. Accordingly, for our review of the sufficiency of the evidence, it is irrelevant to our analysis if the results of the field sobriety tests and BAC test were improperly

admitted at trial. *See id.* Additionally, we must defer to the jury's determination of witness credibility. *Brooks*, 323 S.W.3d at 899.

Appellant contends that Officer Thomas did not follow proper procedures in administering the HGN test. Specifically, Appellant contends that Officer Thomas deviated from HGN testing procedures by placing the stimulus more than fifteen inches away from Appellant's eyes. Texas courts have routinely held that slight variations in HGN testing procedures do not make HGN test results inadmissible. *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). Furthermore, slight variations in HGN testing procedures only affect the weight a jury is to give to HGN test results. *See id.* at 380.

We previously addressed a similar issue in *Maupin*. 2010 WL 4148343, at *1. In *Maupin*, the officer admitted that he moved the stimulus further than normal and completed the test too quickly. *Id.* at *3. We held that this sort of variation was within the leeway given to police in performing field sobriety test. *Id.* at *4.

Given our holding in *Maupin*, and the holding in *Compton*, any variance in HGN testing should only affect the weight given to the test results. *See Compton*, 120 S.W.3d at 378; *Maupin* 2010 WL 4148343 at *4. It is the jury's job to weigh the evidence, not ours. *Brooks*, 323 S.W.3d at 899. When the record supports conflicting inferences, we cannot substitute our own judgment for that of the jury, and we are to assume that the factfinder resolved the conflict in favor of the verdict. *Clayton*, 235 S.W.3d at 778.

Officer Thomas instructed Appellant multiple times to look at his finger rather than his face. Additionally, Officer Thomas testified that Appellant gave no indication for unfitness for the HGN test and that Appellant exhibited all six clues for intoxication. It was reasonable for the jury to rely on the HGN test, and the circumstances surrounding the test, as evidence of Appellant's intoxication.

Appellant next contends that the results of his walk-and-turn test are unreliable and do not support his conviction. Specifically, Appellant contends that his test results were unreliable because Officer Thomas failed to verbally instruct him on the procedure for making a proper turn, "strained the FST rules by declaring that 'failing to walk heel to toe' clue equates to an additional 'stepping off the line' clue," and damaged his credibility by retracting a previously found clue. However, Officer Thomas demonstrated to Appellant how to make a proper turn, and Appellant failed to comply with the demonstration.

Officer Thomas also observed that Appellant failed to walk heel to toe on multiple occasions during the test. Additionally, Officer Thomas testified that "when you do not touch heel to toe, you are stepping off of the line." It is immaterial whether Appellant's failure to walk heel to toe should count as one or two clues because, as Officer Thomas testified, Appellant only needed to exhibit two or more clues to fail this test. Finally, while it is true Officer Thomas retracted a clue he previously found, we cannot retroactively judge the credibility of a witness, that is the role of the jury. *Id.*

Appellant next contends that the results of his one-leg stand test were unreliable and insufficient to support his conviction. Specifically, Appellant cites to his recent collision and to his mother's testimony concerning his leg injuries. Once again, the jury is sole judge of both a witnesses' credibility and the weight assigned to that witnesses' testimony. *Id.* Before performing the one-leg stand test, Appellant did not inform Officer Thomas of any leg issues that would affect his performance on the test. Thus, it was reasonable for the jury to assign less weight to Appellant's mother's testimony.

Appellant further contends that the results of his blood test were inconclusive and unreliable. Appellant's blood test indicated that his BAC was .063. However, medical personnel did not perform the blood test until nearly three hours after the

accident. The jury heard testimony that a person's BAC decreases at a rate of .015/.025 per hour. Therefore, it was reasonable for the jury to conclude that Appellant's was above the legal limit at the time of the offense.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. Taken together and viewed in the light most favorable to the verdict, a reasonable jury could have found beyond a reasonable doubt that Appellant was intoxicated. Accordingly, there was sufficient evidence supporting Appellant's conviction for felony driving while intoxicated. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


October 21, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.